UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                          CASE NO. 6:08-bk-01693-KSJ

**GEA SEASIDE INVESTMENT INC,** *et al.,*        CHAPTER 11

                            Debtors.             **Jointly-administered with**
_____/        **Case 6:08-bk-1695-KSJ**


**PLAN OF REORGANIZATION SUBMITTED BY
GEA SEASIDE INVESTMENT INC. AND JACK ABERMAN**


COUNSEL FOR DEBTORS

ELIZABETH GREEN, ESQ.
JACQUELINE FERRIS, ESQ.
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
390 N. ORANGE AVENUE, SUITE 600
ORLANDO, FLORIDA, 32801


August 20, 2008

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:                                    CASE NO. 6:08-bk-01693-KSJ

**GEA SEASIDE INVESTMENT INC,** *et al.,*    CHAPTER 11

                          Debtors.          **Jointly-administered with**
_____/          **Case 6:08-bk-1695-KSJ**

## PLAN OF REORGANIZATION SUBMITTED BY
## GEA SEASIDE INVESTMENT INC. AND JACK ABERMAN

**GEA SEASIDE INVESTMENT INC.** ("GEA") and **JACK ABERMAN** ("Aberman") (collectively, the "Debtors"), hereby proposes the following plan of reorganization ("Plan"), pursuant to Chapter 11 of the Code, 11 U.S.C. §101, *et seq.*

## ARTICLE I. - DEFINITIONS.

For the purpose of the Plan, the following terms will have the meanings set forth below:

**Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Code and of a kind referred to in Section 507(a)(1) of the Code, including without limitation, the actual, necessary costs, and expenses incurred, after the commencement of the Bankruptcy Case, of preserving Debtors' estate and operating the business of the Debtors, including wages, salaries or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under Sections 330(a) or 331 of the Code, and all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code.

**Administrative Claims Bar Date** shall mean the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed. The Administrative Claims Bar

Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

**Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim, which has been or becomes allowed by Order of the Bankruptcy Court.

**Allowed Amount** shall mean the amount of an Allowed Claim.

**Allowed Claim** shall mean a Claim: (a) with respect to which a proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Section 501 of the Code and Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Order of the Bankruptcy Court; (b) deemed filed pursuant to Section 1111(a) of the Code by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by the Debtors with the Bankruptcy Court pursuant to Section 521(1) and Rule 1007(b) and not listed as disputed, contingent or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Order of the Bankruptcy Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by the Debtors, within any applicable period of limitation fixed pursuant to the Plan, by Rule 3003, or any Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a). Unless otherwise specified in the Plan or any Order of the

Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

**Allowed Interest** shall mean an Interest: (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or a Final Order; or (b) scheduled in the list of equity security holders prepared and filed by Debtors with the Bankruptcy Court pursuant to Rule 1007(b); and in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or any Order of the Bankruptcy Court.

**Allowed Priority Tax Claim** shall mean a Priority Claim, pursuant Code section 507(a)(8), to the extent such Priority Claim is or becomes an Allowed Claim.

**Allowed Secured Claim** shall mean a Secured Claim to the extent provided under Section 506 of the Bankruptcy Code and to the extent that neither the Lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided for herein.

**Allowed Unsecured Claim** shall mean an Unsecured Claim to the extent such Unsecured Claim is or becomes as Allowed Claim.

**Argent Mortgage Company LLC** shall mean Argent Mortgage Company LLC and its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Ballot** shall mean the form(s) distributed to each Creditor holding a Claim in an impaired Class, on which is to be indicated the acceptance or rejection of the Plan.

**Ballot Date** shall mean the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

**Bank of New York** shall mean The Bank of New York Trust Company, N.A. its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Bankruptcy Case** shall mean the bankruptcy cases of GEA Seaside Investment Inc. and Jack Aberman, which are pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, pursuant to Chapter 11 of the Code.

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which Debtors' Chapter 11 Cases are pending, and any Bankruptcy Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

**Bankruptcy Estate** shall mean the estate created pursuant to Section 541 of the Code by the commencement of Debtors' Bankruptcy Cases and shall include all property of the Estate as defined in such Section.

**Bar Date** shall mean the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in these Cases.

**Bayview** shall mean Bayview Loan Servicing, LLC its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as

servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Business Day** shall mean a day other than a Saturday or a Sunday or any other day on which the majority of commercial banks located in Orlando, Florida, are required or authorized to close.

**Cash** shall mean cash or cash equivalents, including, but not limited to, checks, bank deposits or other similar items.

**Causes of Action** shall mean the following actions and causes of action (and the proceeds thereof), whether or not commenced as of the date hereof: (a) all proceedings, commenced or to be commenced pursuant to Bankruptcy Code Sections 502 and Sections 544-554 (or equivalent provisions of applicable non-bankruptcy laws); (b) all claims against Creditors or Holders of Interests, parties having dealings, relationships or transactions with or related to the Debtors, any party named or identified in the Debtors' schedules or statement of financial affairs, any pleadings filed in this Bankruptcy Case; and (c) the Debtors' rights of setoff, recoupment, contribution, reimbursement, subrogation, or indemnity and any other indirect claim of any kind whatsoever.

**Charles D Robinson III and Williams T Morrison** shall mean Charles D Robinson III and Williams T Morrison their agents, representatives, counsel, successors, and assigns, predecessors, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under their control or on their behalf.

**Citibank** shall mean Citibank N.A. its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns,

predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Claim** shall mean any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**Class** shall mean any Class into which Claims or Interests are classified pursuant to the Plan.

**Class 1 Claim, Class 2 Claim, Class 3 Claim**, *etc.*, shall mean the specific Class into which Claims or Interest are classified pursuant to Article II of the Plan.

**Code** shall mean the United States Bankruptcy Code, 11 U.S.C. §. 101, *et seq.*, and any amendments thereof.

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order pursuant to Section 1129 of the Code.

**Confirmation Date** shall mean the date of entry of the Confirmation Order by the Bankruptcy Court.

**Confirmation Hearing Date** shall mean the date scheduled by the Bankruptcy Court on which the Bankruptcy Court holds a hearing on the Confirmation of the Debtors' Plan.

**Confirmation Order** shall mean the Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Code, and which is in form and content acceptable to the Debtors.

**Creditor** shall have the same meaning as set forth in Section 101(1) of the Code.

**Debra Miller** shall mean Debra Miller, her agents, representatives, counsel, successors, and assigns, predecessors, any entity for which she acts as attorney in fact, trustee or as servicer, and all other persons or entities acting or purporting to act under her control or on her behalf.

**Debtors** shall mean GEA Seaside Investments, Inc. and Jack Aberman.

**Disclosure Statement** shall mean the Disclosure Statement approved for distribution by the Bankruptcy Court pursuant to Section 1125 of the Code together with any amendments or modifications thereto.

**Disposable Income** shall have the meaning set forth in 11 U.S.C. § 1325(b)(2).

**Disposable Income Account** shall mean the account(s) established by the Debtors for the benefit of holders of Class 83 Unsecured Allowed Claims. Aberman shall be the only authorized signatory on the Disposable Income Account. All Disposable Income for the five (5) year period, which shall commence on the Effective Date, shall be deposited in such accounts until distributed to creditors on a quarterly basis. All such accounts shall be interest bearing except that the Debtors may maintain a single non-interest bearing Disposable Income Account from which disbursements are made if maintaining such account will, in the judgment of the Debtors, result in lower fees being assessed against the Disposable Income Account.

**Disputed Claim** shall mean a Claim against Debtors which is not an Allowed Claim and which has not been disallowed by a Final Order of the Bankruptcy Court.

**Disputed Unsecured Claim** shall mean any Unsecured Claim, which is not an Allowed Unsecured Claim.

**Distribution** shall mean the Distribution to the holders of Allowed Claims.

**Edward Nowak Trust** shall mean Edward Nowak and Mary Ellen Nowak, as co-trustees of that unrecorded revocable trust agreement entitled Edward Nowak Trust, dated August 9, 2005, and its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Effective Date** shall mean a date 20 days after the Bankruptcy Court has entered the Confirmation Order and provided that no appeal of the Confirmation Order is pending; *provided, however*, that the Effective Date shall not occur until Debtors file the notice called for under the Plan with the Bankruptcy Court, and such notice shall not be filed until all of the preconditions to the occurrence of the Effective Date set forth in the Plan have been met. In the event that an appeal of the Confirmation Order is pending, the Effective Date may still occur on the 21st day after the entry of the Confirmation Order provided that the Debtors stipulate in writing that the Effective Date shall occur on such date.

**Equity Interest** shall mean any and all issued or authorized common stock, stock options and warrants in GEA Seaside Investment, Inc.

**Estate Assets** shall mean all the assets, property and cash of the Debtors, as defined in Section 541 of the Code (excluding assets previously distributed, expended or otherwise disposed of by the Debtors prior to the Confirmation Date not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date, including, without limitation, the Causes of Action.

**Fifth Third** shall mean Fifth Third Mortgage Company its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel,

successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Final Distribution Date** shall mean the date as soon as practicable after the last to occur of: (a) the date that the last Claim becomes an Allowed Claim; or (b) the date upon which all Causes of Action have been liquidated and converted to Cash or abandoned.

**Final Order** shall mean an Order or judgment of the Bankruptcy Court, which is no longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari proceeding is pending.

**First Horizon** shall mean First Horizon Home Loan Corporation its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**First Mariner** shall mean First Mariner Bank its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Fiscal Year** shall mean the fiscal year of Debtors, which commences on the first day of January and concludes on the final day of December in the following calendar year.

**GMAC Mortgage** shall mean GMAC Mortgage, LLC, its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel,

successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**H&R Block Bank** shall mean H&R Block Bank its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Homecomings Financial** shall mean Homecomings Financial, LLC its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**HSBC Bank** shall mean HSBC Bank USA its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Impaired Class** shall mean any Class whose members are holders of Claims or Interests, which are impaired within the meaning of Section 1124 of the Code.

**Indymac Bank** shall mean Indymac Bank, FSB its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as

servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Insider** shall have the same meaning as set forth in Section 101(31) of the Code.

**Interest** shall mean an issued or authorized outstanding share or shares of common stock, a warrant or warrants for the issuance of such share or shares, other stock, stock equivalents, limited partnership interest, or other equity instruments in the Debtor.

**Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of Debtors but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by Debtors or any other party with standing to bring such a challenge.

**Linda Justice** shall mean Linda Justice as trustee of the Linda Jeanne Justice Recovable Trust, dated 1999 its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**National City** shall mean National City Mortgage Co., its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Nonordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

U:\BKRY\GEA SEASIDE INV\PLD\GEA\PLAN 7-8-08.DOC

**Novelle Financial** shall mean Novelle Financial Services its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Order** shall mean a determination, decree, adjudication or judgment issued or entered by the Bankruptcy Court.

**Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred in the ordinary course of business of the Debtors; *provided, however*, that any due and unpaid, post-petition payment in respect of rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

**Pari Passu** shall mean creditors who, in marshalling assets, are entitled to receive out of the same fund without any precedence over each other.

**Payment** shall mean the Cash to be paid under the Plan to the holders of Allowed Claims.

**Peoples First Community Bank** shall mean and its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Person** shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

**Petition Date** shall mean September 20, 2007, the date on which the Debtors filed voluntary petitions for relief under Chapter 11 of the Code.

**Plan** shall mean this Chapter 11 plan of reorganization, as amended or modified in accordance with the terms hereof or in accordance with the Code.

**Plan Payments** shall mean payments made pursuant to the terms of the Plan, including the payment of Nonordinary Course Administrative Claims.

**Pre-petition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

**Prime Rate** shall be the prime rate of interest as published in the *WALL STREET JOURNAL* on the date the Confirmation Order is entered by the Bankruptcy Court.

**Priority Claim** shall mean a Claim other than an Administrative Claim to the extent such Claim is entitled to priority in payment under Section 507 of the Code.

**Pro Rata Share** means as to any Allowed Class 83 claims as of the Effective Date or such later date on which such claim becomes Allowed, a fraction of: (i) the numerator of which is the amount of such Allowed Class 83 Claim; and (ii) the denominator of which is the sum of (x) all Allowed Class 83 Claims as of such date plus (y) all Disputed Class 83 Claims as of such date.

**Professional** shall mean: (i) any professional retained in the Chapter 11 Case pursuant to an order of the Bankruptcy Court in accordance with Section 327 or 1103 of the Bankruptcy Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Section 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses

14

are subject to approval by the Bankruptcy Court as reasonable pursuant to Section 1129(a)(4) of the Bankruptcy Code.

**Property** shall have the same meaning as the term "property of the estate" delineated in Section 541 of the Code.

**Pro Rata** shall mean with respect to an Allowed Claim in a given class, that same proportion that the Allowed Claims bears to the aggregate of all Allowed Claims in such class.

**R-G Crown Bank** shall mean R-G Crown Bank and its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**RBJ** shall mean RBJ LLC and its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Resmae Mortgage** shall mean Resmae Mortgage Corporation and its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Resource Bank** shall mean Resource Bank and its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and

assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Rule** or **Rules** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

**Saxon Mortgage** shall mean Saxon Mortgage and its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable nonbankruptcy laws. A Secured Claim which is challenged by Debtors shall only be an Allowed Secured Claim to the extent that such Claim is deemed to be an Allowed Secured Claim in the Plan or the underlying security interest is recognized as valid by the Bankruptcy Court and the difference in amount between such a Creditor's Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**Security Interest** shall mean "security interest" as defined in 11 U.S.C.§ 101(51).

**Sunshine State Community Bank** shall mean Sunshine State Community Bank and its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as

attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Tax Claim** shall mean an unsecured Claim for taxes entitled to priority under Section 507(a)(8) of the Code.

**Trailwood 8** shall mean Trailwood 8, Inc. and its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Unclaimed Property** shall mean any cash or any other Property of the Debtors unclaimed for a period of six (6) months after any Distribution or, in the event that the Distribution was made on the Final Distribution Date, six (6) months after the Final Distribution Date.

**Unimpaired Class** shall mean any Class the members of which are the holders of Claims or Interests, which are not impaired within the meaning of Section 1124 of the Code.

**Unsecured Claim** shall mean a Claim that arose or is deemed to have arisen prior to the Petition Date and is not a Secured Claim or an Administrative Claim.

**United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. §581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

**US Bank National** shall mean U.S. Bank National Association and its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel,

17

successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Wachovia Bank** shall mean Wachovia Bank, N.A. its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Washington Mutual** shall mean Washington Mutual Bank its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Wells Fargo** shall mean Wells Fargo Bank, N.A. its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact, trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

**Woodlea Investment** shall mean Woodlea Investment Company, LLC its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, directors, counsel, successors, and assigns, predecessors in interest, any entity for which it acts as attorney in fact,

trustee, or as servicer, and all other persons or entities acting or purporting to act under its control or on its behalf.

## ARTICLE II. - CLASSIFICATION OF CLAIMS AND INTERESTS.

All Claims and Interests treated under Articles III-V of the Plan are divided into the following classes, which shall be mutually exclusive:

A.    Class 1 –Daimler Chrysler Financial Services.

Class 1 consists of an automobile loan in the principal amount of $12,544.10, which is secured by a Lien on a 2004 Dodge Truck Dakota, VIN number 1D7HW58N46S544549.

B.    Class 2 – US Bank National (316 Butler Blvd.)

Class 2 consists of the Allowed Secured Claim of US Bank National, which arises from a pre-petition loan, in the original principal amount of $229,500.00, with the original lender Acoustic Home Loans, LLC.  The Claim of US Bank National is allegedly secured by a first priority mortgage Lien[1] on the property located at 316 Butler Boulevard, Daytona Beach, Florida 32118.

C.    Class 3-Washington Mutual  (318 Butler Blvd.)

Class 3 consists of the Allowed Secured Claim of Washington Mutual, which arises from a pre-petition loan in the original principal amount of $157,500.00 with the original lender Long Beach Mortgage Company.  The Claim of Washington Mutual is allegedly secured by a first priority mortgage Lien on the property located at 318 Butler Boulevard, Daytona Beach, Florida 32118.

---

[1]  When referring to first priority mortgage Liens or second priority mortgage Liens in the classification of claims, such stated priority is exclusive of tax Liens, which take priority over the mortgage Liens.

D.      <u>Class 4- Saxon Mortgage  (311 N. Hollywood ½)</u>

Class 4 consists of the Allowed Secured Claim of Saxon Mortgage, which arises from a pre-petition loan in the original principal amount of $120,000.00 with the original lender Novastar Mortgage, Inc.  The Claim of Saxon Mortgage is allegedly secured by a first priority mortgage Lien on the property located at 311 N. Hollywood Drive ½, Daytona Beach, Florida 32119.

F.      <u>Class 5- Wachovia Bank (311 N. Hollywood ½)</u>

Class 5 consists of the Allowed Secured Claim of Wachovia Bank, which arises from a pre-petition prime equity line of credit loan, in the amount of $61,000.00.  The Claim of Wachovia Bank is allegedly secured by a second priority Lien on the property located at 311 N. Hollywood Drive ½, Daytona Beach, Florida 32119.

G.      <u>Class 6-US Bank National (315 1/2 Hollywood)</u>

Class 6 consists of the Allowed Secured Claim of US Bank National, which arises from a pre-petition loan, in the original principal amount of $123,750.00 with the original lender Resource Bank.  The Claim of US Bank National is allegedly secured by a first priority mortgage Lien on 315 ½ North Hollywood Daytona Beach, Florida 32118.

H.      <u>Class 7- Resource Bank (315 ½ Hollywood)</u>

Class 7 consists of the Allowed Secured Claim of Resource Bank, which arises from a pre-petition loan, in the original principal amount of $24,750.00 with Resource Bank. The Claim of Resource Bank is allegedly secured by a second priority mortgage Lien on 315 ½ North Hollywood Daytona Beach, Florida 32118.

I.      <u>Class 8- GMAC Mortgage (319 Hollywood).</u>

20

Class 8 consists of the Allowed Secured Claim of GMAC Mortgage, which arises from a pre-petition loan, in the original principal amount of $252,000.00, with the original lender Option One Mortgage Corporation. The Claim of GMAC Mortgage is allegedly secured by a first priority mortgage Lien on the property located at 319 Hollywood Avenue, Daytona Beach, Florida 32118.

J.     Class 9- Homecomings Financial (308 N. Peninsula)

Class 9 consists of the Allowed Secured Claim of Homecomings Financial, which arises from a pre-petition loan, in the original principal amount of $267,750.00, with the original lender Homeview Lending, Inc. The Claim of Homecomings Financial is allegedly secured by a first priority mortgage Lien on the property located at 308 N. Peninsula Drive, Daytona Beach, Florida 32118.

K.     Class 10- Citibank (312 N. Peninsula)

Class 10 consists of the Allowed Secured Claim of Citibank, N.A., which arises from a pre-petition loan, in the original principal amount of $200,000.00, with the original lender Maryland Banking Corporation. The Claim of Citibank is allegedly secured by a first priority mortgage Lien on the property located at 312 N. Peninsula Drive, Daytona Beach, Florida 32118.

L.     Class 11- GMAC Mortgage (312 N. Peninsula)

Class 11 consists of the Allowed Secured Claim of GMAC Mortgage, which arises from a pre-petition loan, in the original principal amount of $25,000.00, with the original lender 1st Mariner Bank. The Claim of GMAC Mortgage is allegedly secured by a second priority mortgage Lien on the property located at 312 N. Peninsula Drive, Daytona Beach, Florida 32118.

21

M.    Class 12-First Mariner Bank (320 N. Peninsula)

Class 12 consists of the Allowed Secured Claim of First Mariner Bank, which arises from a pre-petition loan, in the original principal amount of $208,000.00, with First Mariner Bank. The Claim of First Mariner Bank is allegedly secured by a first priority mortgage Lien on the property located at 320 N. Peninsula Drive, Daytona Beach, Florida 32118.

N.    Class 13-First Mariner Bank (320 N. Peninsula)

Class 13 consists of the Allowed Secured Claim of First Mariner Bank, which arises from a pre-petition loan, in the original principal amount of $26,000.00, with First Mariner Bank. The Claim of First Mariner Bank is allegedly secured by a second priority mortgage Lien on the property located at 320 N. Peninsula Drive, Daytona Beach, Florida 32118.

O.    Class 14-US Bank National (324 N. Peninsula)

Class 14 consists of the Allowed Secured Claim of US Bank National, which arises from a pre-petition loan, in the original principal amount of $288,000.00, with original lender Option One Mortgage Corporation. The Claim of US Bank National is allegedly secured by a first priority mortgage Lien on the property located at 324 N. Peninsula Drive, Daytona Beach, Florida 32118.

P.    Class 15-HSBC Bank (330 N. Peninsula)

Class 15 consists of the Allowed Secured Claim of HSBC Bank, which arises from a pre-petition loan, in the original principal amount of $306,000.00, with original lender Option One Mortgage Corporation. The Claim of HSBC Bank is allegedly secured by a first priority mortgage Lien on the property located at 330 N. Peninsula Drive, Daytona Beach, Florida 32118.

Q.   Class 16-Homecomings Financial (3764 Cardinal)

Class 16 consists of the Allowed Secured Claim of Homecomings Financial, which arises from a pre-petition loan, in the original principal amount of $256,500.00, with original lender First Guaranty Mortgage Corporation. The Claim of Homecomings Financial is allegedly secured by a first priority mortgage Lien on the property located at 3764 Cardinal Blvd, Port Orange, Florida 32127.

R.   Class 17-RBJ (3790 Cardinal)

Class 17 consists of the Allowed Secured Claim of RBJ, which arises from a pre-petition loan, in the original principal amount of $228,000.00, with original lender Concord Mortgage Company. The Claim of RBJ is allegedly secured by a first priority mortgage Lien on the property located at 3790 Cardinal Blvd, Port Orange, Florida 32127.

S.   Class 18-RBJ (3790 Cardinal)

Class 18 consists of the Allowed Secured Claim of RBJ, which arises from a pre-petition loan, in the original principal amount of $28,500.00, with original lender Concord Mortgage Company. The Claim of RBJ is allegedly secured by a second priority mortgage Lien on the property located at 3790 Cardinal Blvd, Port Orange, Florida 32127.

S.   Class 19-HSBC Bank–(100 Carolyn)

Class 19 consists of the Allowed Secured Claim of HSBC Bank, which arises from a pre-petition loan, in the original principal amount of $276,300.00, with original lender Option One Mortgage Corporation. The Claim of HSBC Bank is allegedly secured by a first priority mortgage Lien on the property located at 100 Carolyn Terrace, Daytona Beach, Florida 32118.

T.    Class 20-First Horizon  (101 Carolyn)

Class 20 consists of the Allowed Secured Claim of First Horizon, which arises from a pre-petition loan, in the original principal amount of $204,000.00, with First Horizon. The Claim of First Horizon is allegedly secured by a first priority mortgage Lien on the property located at 101 Carolyn Terrace, Daytona Beach, Florida 32118.

U.    Class 21-First Horizon (101 Carolyn)

Class 21 consists of the Allowed Secured Claim of First Horizon, which arises from a pre-petition loan, in the original principal amount of $25,500.00, with First Horizon.  The Claim of First Horizon is allegedly secured by a second priority mortgage Lien on the property located at 101 Carolyn Terrace, Daytona Beach, Florida 32118.

V.    Class 22-RBJ (3 Carter)

Class 22 consists of the Allowed Secured Claim of RBJ, which arises from a pre-petition loan, in the original principal amount of $208,000.00, with original lender Concord Mortgage Company.  The Claim of RBJ is allegedly secured by a first priority mortgage Lien on the property located at 3 Carter Terrace, Daytona Beach, Florida 32118.

W.    Class 23-RBJ (3 Carter)

Class 23 consists of the Allowed Secured Claim of RBJ, which arises from a pre-petition loan, in the original principal amount of $26,000.00, with original lender Concord Mortgage Company.  The Claim of RBJ is allegedly secured by a second priority mortgage Lien on the property located at 3 Carter Terrace, Daytona Beach, Florida 32118.

X.    Class 24-Bank of New York (109 Raymond Ave)

Class 24 consists of the Allowed Secured Claim of the Bank of New York, which

arises from a pre-petition loan, in the original principal amount of $298,800.00, with original lender First Guaranty Mortgage Corporation. The Claim of Bank of New York is allegedly secured by a first priority mortgage Lien on the property located at 109 Raymond Avenue, Port Orange, Florida 32127.

Y. Class 25-H & R Block Bank -(206 S. Venetian)

Class 25 consists of the Allowed Secured Claim of H&R Block Bank, which arises from a pre-petition loan, in the original principal amount of $292,500.00, with original lender Option One Mortgage Corporation. The Claim of H&R Block Bank is allegedly secured by a first priority mortgage Lien on the property located at 206 Venetian Way, Daytona Beach, Florida 32127-5714.

Z. Class 26-Wells Fargo (615 Wisteria Road)

Class 26 consists of the Allowed Secured Claim of Wells Fargo, which arises from a pre-petition loan, in the original principal amount of $280,500.00, with Wells Fargo. The Claim of Wells Fargo is allegedly secured by a first priority mortgage Lien on the property located at 615 Wisteria Road, Daytona Beach, Florida 32127-5714.

A1. Class 27-Washington Mutual (2711 N. Halifax #796)

Class 27 consists of the Allowed Secured Claim of Washington Mutual, which arises from a pre-petition loan, in the original principal amount of $108,000.00, with original lender Long Beach Mortgage Company. The Claim of Washington Mutual is allegedly secured by a first priority mortgage Lien on the property located at 2711 N. Halifax Avenue, #796, Daytona Beach, Florida 32118.

B1. Class 28-Homecomings Financial (121 Grandview)

Class 28 consists of the Allowed Secured Claim of Homecomings Financial, which arises from a pre-petition loan, in the original principal amount of $255,000.00, with original lender Homeview Lending, Inc. The Claim of Homecoming Financial is allegedly secured by a first priority mortgage Lien on the property located at 121 Grandview, Daytona Beach, Florida 32118.

### C1. Class 29-First Horizon (509 Harvey Ave)

Class 29 consists of the Allowed Secured Claim of First Horizon, which arises from a pre-petition loan, in the original principal amount of $103,900.00, with First Horizon. The Claim of First Horizon is allegedly secured by a first priority mortgage Lien on the property located at 509 Harvey Avenue, Daytona Beach, Florida 32118.

### D1. Class 30-HSBC Bank (509 Harvey Ave)

Class 30 consists of the Allowed Secured Claim of HSBC Bank, which arises from a pre-petition loan, in the original principal amount of $12,990.00, with original lender First Horizon Home Loan Corporation. The Claim of HSBC Bank is allegedly secured by a second priority mortgage Lien on the property located at 509 Harvey Avenue, Daytona Beach, Florida 32118.

### E1. Class 31-US Bank National (358 Nautilus)

Class 31 consists of the Allowed Secured Claim of US Bank National, which arises from a pre-petition loan, in the original principal amount of $144,000.00, with original lender Argent Mortgage Company, LLC. The Claim of US Bank National is allegedly secured by a first priority mortgage Lien on the property located at 358 Nautilus Avenue, Daytona Beach, Florida 32118.

### F1. Class 32-US Bank National (115 Ogden)

Class 32 consists of the Allowed Secured Claim of US Bank National, which arises from a pre-petition loan, in the original principal amount of $225,000.00, with original lender Charles D Robinson III and William T Morrison. The Claim of US Bank National is allegedly secured by a first priority mortgage Lien on the property located at 115 Ogden Blvd,. Daytona, Beach Florida 32118.

### G1. Class 33- Charles D Robinson III and William T Morrison (115 Ogden)

Class 33 consists of the Allowed Secured Claim of Charles D Robinson III and William T Morrison, which arises from a pre-petition loan, in the original principal amount of $45,000.00, with original lender Charles D Robinson III and William T Morrison. The Claim of Charles D Robinson III and William T Morrison is allegedly secured by a second priority mortgage Lien on the property located at 115 Ogden Blvd,. Daytona, Beach Florida 32118.

### H1. Class 34-Wells Fargo (13 S. Peninsula)

Class 34 consists of the Allowed Secured Claim of Wells Fargo, which arises from a pre-petition loan, in the original principal amount of $222,750.00, with Wells Fargo. The Claim of Wells Fargo is allegedly secured by a first priority mortgage Lien on the property located at 13 S. Peninsula Drive, Daytona Beach, Florida 32118.

### I1. Class 35- Woodlea Investment (444 N. Peninsula)

Class 35 consists of the Allowed Secured Claim of Woodlea Investment, which arises from a pre-petition loan, in the original principal amount of $180,000.00, with Woodlea Investment. The Claim of Woodlea Investment, is allegedly secured by a first priority mortgage Lien on the property located at 444 N. Peninsula Drive, Daytona Beach, Florida 32118.

J1.    Class 36-Debra Miller (444 N. Peninsula)

Class 36 consists of the Allowed Secured Claim of Debra Miller, which arises from a pre-petition loan, in the original principal amount of $20,000.00, with Debra Miller. The Claim of Debra Miller is allegedly secured by a second priority mortgage Lien on the property located at 444 N. Peninsula Drive, Daytona Beach, Florida 32118.

K1.    Class 37-Fifth Third (508 Eastwood)

Class 37 consists of the Allowed Secured Claim of Fifth Third, which arises from a pre-petition loan, in the original principal amount of $242,582.00, with original lender R-G Crown Bank. The Claim of Fifth Third is allegedly secured by a first priority mortgage Lien on the property located at 508 Eastwood Avenue, Daytona Beach, Florida 32118.

L1.    Class 38- Wachovia Bank (508 Eastwood)

Class 38 consists of the Allowed Secured Claim of Wachovia Bank, which arises from a prime equity line of credit loan, in the amount of $141,327.12. The Claim of Wachovia Bank is allegedly secured by a second priority mortgage Lien on the property located at 508 Eastwood Avenue, Daytona Beach, Florida 32118.

M1.    Class 39- Indymac Bank (507 Phoenix)

Class 39 consists of the Allowed Secured Claim of Indymac Bank, which arises from a pre-petition loan, in the original principal amount of $244,000.00 with original lender 1st Mariner Bank. The Claim of Indymac Bank is allegedly secured by a first priority mortgage Lien on the property located at 507 Phoenix Avenue, Daytona Beach, Florida 32118.

N1.    Class 40- Citibank (507 Phoenix)

Class 40 consists of the Allowed Secured Claim of Citibank, which arises from a

pre-petition loan, in the original principal amount of $30,500.00 with original lender 1st Mariner Bank. The Claim of Citibank is allegedly secured by a second priority mortgage Lien on the property located at 507 Phoenix Avenue, Daytona Beach, Florida 32118.

O1.    Class 41-Bayview (420 N. Halifax & 429 N. Peninsula)

Class 41 consists of the Allowed Secured Claim of Bayview, which arises from a pre-petition loan, in the original principal amount of $637,500.00 by and between original lender InterBay Funding, LLC and GEA Seaside and a guaranty of the loan by Aberman. The Claim of Bayview is allegedly secured by a first priority mortgage Lien on the property located at 420 N Halifax Avenue & 429 N. Peninsula Drive, Daytona Beach, Florida 32118.

P1.    Class 42-Edward Nowak Trust (420 N. Halifax & 429 N. Peninsula)

Class 42 consists of the Allowed Secured Claim of Edward Nowak Trust, which arises from a pre-petition loan, in the original principal amount of $85,000.00 with the Edward Nowak Trust. The Claim of the Edward Nowak Trust is allegedly secured by a second priority mortgage Lien on the property located at 420 N Halifax Avenue & 429 N. Peninsula Drive, Daytona Beach, Florida 32118.

Q1.    Class 43-Peoples First Community Bank (434 N. Halifax)

Class 43 consists of the Allowed Secured Claim of Peoples First Community Bank, which arises from a pre-petition loan, in the original principal amount of $340,000.00, with original lender Peoples First Community Bank. The Claim of Peoples First Community Bank is allegedly secured by a first priority mortgage Lien on the property located at 434 N Halifax Avenue, Daytona Beach, Florida 32118.

R1.    Class 44-Wells Fargo (433 N. Peninsula)

Class 44 consists of the Allowed Secured Claim of Wells Fargo, which arises from a pre-petition loan, in the original principal amount of $334,800.00, with Wells Fargo. The Claim of Wells Fargo is allegedly secured by a first priority mortgage Lien on the property located at 433 N. Peninsula Drive, Daytona Beach, Florida 32118.

S1.    Class 45-Debra Miller (433 N. Peninsula)

Class 45 consists of the Allowed Secured Claim of Debra Miller, which arises from a pre-petition loan, in the original principal amount of $42,500.00, with Debra Miller. The Claim of Debra Miller is allegedly secured by a second priority mortgage Lien on the property located at 433 N. Peninsula Drive, Daytona Beach, Florida 32118.

T1.    Class 46- Indymac Bank (232 N. Peninsula)

Class 46 consists of the Allowed Secured Claim of Indymac Bank, which arises from a pre-petition loan, in the original principal amount of $236,000.00 with original lender 1st Mariner Bank. The Claim of Indymac Bank is allegedly secured by a first priority mortgage Lien on the property located at 232 N. Peninsula Avenue, Daytona Beach, Florida 32118.

U1.    Class 47- GMAC Mortgage-(232 N. Peninsula)

Class 47 consists of the Allowed Secured Claim of GMAC Mortgage, which arises from a pre-petition loan, in the original principal amount of $29,500.00, with original lender 1st Mariner Bank. The Claim of GMAC Mortgage is allegedly secured by a second priority mortgage Lien on the property located at 232 N. Peninsula Avenue, Daytona Beach, Florida 32118.

V1.    Class 48- First Mariner Bank (236 N. Peninsula)

Class 48 consists of the Allowed Secured Claim of First Mariner Bank, which

arises from a pre-petition loan, in the original principal amount of $232,000.00, with First Mariner Bank. The Claim of First Mariner Bank is allegedly secured by a first priority mortgage Lien on the property located at 236 N. Peninsula Avenue, Daytona Beach, Florida 32118.

W1.    Class 49-GMAC Mortgage (236 N. Peninsula)  .

Class 49 consists of the Allowed Secured Claim of GMAC Mortgage, which arises from a pre-petition loan, in the original principal amount of $29,000.00, with original lender 1st Mariner Bank. The Claim of GMAC Mortgage is allegedly secured by a second priority mortgage Lien on the property located at 236 N. Peninsula Avenue, Daytona Beach, Florida 32118.

X1.    Class 50- Argent Mortgage Company LLC (420 N. Peninsula)

Class 50 consists of the Allowed Secured Claim of Argent Mortgage Company LLC, which arises from a pre-petition loan, in the original principal amount of $225,000.00, with original lender Argent Mortgage Company, LLC. The Claim of Argent Mortgage Company LLC is allegedly secured by a first priority mortgage Lien on the property located at 420 N. Peninsula Avenue, Daytona Beach, Florida 32118.

Y1.    Class 51-US Bank National (428 N. Peninsula)

Class 51 consists of the Allowed Secured Claim of US Bank National, which arises from a pre-petition loan, in the original principal amount of $226,500.00, with original lender Charles D Robinson, III and William T. Morrison. The Claim of US National Bank is allegedly secured by a first priority mortgage Lien on the property located at 428 N. Peninsula Avenue, Daytona Beach, Florida 32118.

Z1.    Class 52-Charles D Robinson, III and William T Morrison (428 N. Peninsula)

Class 52 consists of the Allowed Secured Claim of Charles D Robinson, III and William T Morrison, which arises from a pre-petition loan, in the original principal amount of $45,300.00, with original lender Charles D Robinson, III and William T. Morrison. The Claim of Charles D Robinson, III and William T Morrison is allegedly secured by a second priority mortgage Lien on the property located at 428 N. Peninsula Avenue, Daytona Beach, Florida 32118.

### A2. Class 53-Homecomings Financial (1928 Marilyn)

Class 53 consists of the Allowed Secured Claim of Homecomings Financial, which arises from a pre-petition loan, in the original principal amount of $243,000.00, with original lender Homeview Lending, Inc. The Claim of Homecomings Financial is allegedly secured by a first priority mortgage Lien on the property located at 1928 Marilyn Street, Daytona Beach, Florida 32118.

### B2. Class 54-Indymac Bank (244-1 Poinciana)

Class 54 consists of the Allowed Secured Claim of Indymac Bank, which arises from a pre-petition loan, in the original principal amount of $255,000.00, with original lender Homeview Lending, Inc. The Claim of Indymac Bank is allegedly secured by a first priority mortgage Lien on the property located at 244-1 Poinciana Avenue, Daytona Beach, Florida 32118.

### C2. Class 55-US Bank National (216 Morningside)

Class 55 consists of the Allowed Secured Claim of US Bank National, which arises from a pre-petition loan, in the original principal amount of $255,000.00, with original lender Option One Mortgage Corporation. The Claim of US Bank National is allegedly secured

by a first priority mortgage Lien on the property located at 216 Morningside Drive, Daytona Beach, Florida 32118.

D2.     Class 56-National City (Monroe Street, Lot 23)

Class 56 consists of the Allowed Secured Claim of National City, which arises from a pre-petition loan, in the original principal amount of $152,800.00, with original lender Harbor Federal Savings Bank.  The Claim of National City is allegedly secured by a first priority mortgage Lien on the property located at Monroe Street, Lot 23, Port Orange, Florida 32127.

E2.     Class 57-Washington Mutual-(28000 Atlantic Ave. Unit #201)

Class 57 consists of the Allowed Secured Claim of Washington Mutual, which arises from a pre-petition loan, in the original principal amount of $175,500.00, with original lender Long Beach Mortgage Company.  The Claim of Washington Mutual is allegedly secured by a first priority mortgage Lien on the property located at 2800 N. Atlantic Avenue, Apt. 201, Daytona Beach, Florida 32118.

F2.     Class 58-Novelle Financial (28000 Atlantic Ave. Unit #409)

Class 58 consists of the Allowed Secured Claim of Novelle Financial, which arises from a pre-petition loan, in the original principal amount of $140,250.00, with original lender Novelle Financial Services.  The Claim of Novelle Financial is allegedly secured by a first priority mortgage Lien on the property located at 2800 N. Atlantic Avenue, Apt. 409, Daytona Beach, Florida 32118.

G2.     Class 59- Washington Mutual (28000 Atlantic Ave. Unit #511)

Class 59 consists of the Allowed Secured Claim of Washington Mutual, which arises from a pre-petition loan, in the original principal amount of $144,900.00, with original

33

lender Long Beach Mortgage Company. The Claim of Washington Mutual is allegedly secured by a first priority mortgage Lien on the property located at 2800 N. Atlantic Avenue, Apt. 511, Daytona Beach, Florida 32118.

H2.    Class 60- Homecomings Financial (28000 Atlantic Ave. Unit #801)

Class 60 consists of the Allowed Secured Claim of Homecomings Financial, which arises from a pre-petition loan, in the original principal amount of $231,920.00, with original lender Cimarron Mortgage Company. The Claim of Homecomings Financial is allegedly secured by a first priority mortgage Lien on the property located at 2800 N. Atlantic Avenue, Apt. 801, Daytona Beach, Florida 32118.

I2.    Class 61- US Bank National  (28000 Atlantic Ave. Unit #1202)

Class 61 consists of the Allowed Secured Claim of US Bank National, which arises from a pre-petition loan, in the original principal amount of $189,000.00, with original lender Argent Mortgage Company, LLC. The Claim of US Bank National is allegedly secured by a first priority mortgage Lien on the property located at 2800 N. Atlantic Avenue, Apt. 1202, Daytona Beach, Florida 32118.

J2.    Class 62- Sunshine State Community Bank  (37 S. Grandview)

Class 62 consists of the Allowed Secured Claim of Sunshine State Community Bank, which arises from a pre-petition loan, in the original principal amount of $157,500.00, with original lender Sunshine State Community Bank. The Claim of Sunshine State Community Bank is allegedly secured by a first priority mortgage Lien on the property located at 37 S. Grandview Avenue, Daytona Beach, Florida 32118.

K2.    Class 63- Linda Justice (37 S. Grandview)

Class 63 consists of the Allowed Secured Claim of Linda Justice, which arises from a pre-petition loan, in the original principal amount of $18,400.00, with Linda Justice. The Claim of Linda Justice is allegedly secured by a second priority mortgage Lien on the property located at 37 S. Grandview Avenue, Daytona Beach, Florida 32118.

L2.    Class 64- IndyMac Bank (38 S. Grandview)

Class 64 consists of the Allowed Secured Claim of IndyMac Bank, which arises from a pre-petition loan, in the original principal amount of $272,000.00, with original lender 1st Mariner Bank. The Claim of IndyMac Bank is allegedly secured by a first priority mortgage Lien on the property located at 38 S. Grandview Avenue, Daytona Beach, Florida 32118.

M2.    Class 65- Citibank (38 S. Grandview)

Class 65 consists of the Allowed Secured Claim of Citibank, which arises from a pre-petition loan, in the original principal amount of $34,000.00, with original lender 1st Mariner Bank. The Claim of Citibank is allegedly secured by a second priority mortgage Lien on the property located at 38 S. Grandview Avenue, Daytona Beach, Florida 32118.

N2.    Class 66- Resmae Mortgage (229 N. Hollywood Ave.)

Class 66 consists of the Allowed Secured Claim of Resmae Mortgage, which arises from a pre-petition loan, in the original principal amount of $220,500.00, with original lender Resmae Mortgage. The Claim of Resmae Mortgage is allegedly secured by a first priority mortgage Lien on the property located at 229 North Hollywood Avenue, Daytona Beach, Florida 32118.

O2.    Class 67-Citibank (231 N. Hollywood Ave.)

Class 67 consists of the Allowed Secured Claim of Citibank, which arises from a

pre-petition loan, in the original principal amount of $230,400.00, with original lender 1st Mariner Bank. The Claim of Citibank is allegedly secured by a first priority mortgage Lien on the property located at 231 North Hollywood Avenue, Daytona Beach, Florida 32118.

P2.    Class 68-GMAC Mortgage  (231 N. Hollywood Ave.)

Class 68 consists of the Allowed Secured Claim of GMAC Mortgage, which arises from a pre-petition loan, in the original principal amount of $28,800.00, with original lender 1st Mariner Bank. The Claim of GMAC Mortgage is allegedly secured by a second priority mortgage Lien on the property located at 231 North Hollywood Avenue, Daytona Beach, Florida 32118.

Q2.    Class 69- IndyMac Bank (240 N. Hollywood Ave.)

Class 69 consists of the Allowed Secured Claim of IndyMac Bank, which arises from a pre-petition loan, in the original principal amount of $204,000.00, with original lender 1st Mariner Bank. The Claim of IndyMac Bank is allegedly secured by a first priority mortgage Lien on the property located at 240 North Hollywood Avenue, Daytona Beach, Florida 32118.

R2.    Class 70- Citibank (240 N. Hollywood Ave.)

Class 70 consists of the Allowed Secured Claim of Citibank, which arises from a pre-petition loan, in the original principal amount of $25,500.00, with original lender 1st Mariner Bank. The Claim of Citibank is allegedly secured by a second priority mortgage Lien on the property located at 240 North Hollywood Avenue, Daytona Beach, Florida 32118.

S2.    Class 71- Citibank (312 N. Hollywood Ave.)

Class 71 consists of the Allowed Secured Claim of Citibank, which arises from a pre-petition loan, in the original principal amount of $196,000.00, with original lender 1st

Mariner Bank. The Claim of Citibank is allegedly secured by a first priority mortgage Lien on the property located at 312 North Hollywood Avenue, Daytona Beach, Florida 32118.

T2.     Class 72- Citibank (312 N. Hollywood Ave.)

Class 72 consists of the Allowed Secured Claim of Citibank, which arises from a pre-petition loan, in the original principal amount of $24,500.00, with original lender 1st Mariner Bank. The Claim of Citibank is allegedly secured by a second priority mortgage Lien on the property located at 312 North Hollywood Avenue, Daytona Beach, Florida 32118.

U2.     Class 73- RBJ (21 S. Peninsula Dr.)

Class 73 consists of the Allowed Secured Claim of RBJ, which arises from a pre-petition loan, in the original principal amount of $212,000.00, with original lender Concord Mortgage Company. The Claim of RBJ is allegedly secured by a first priority mortgage Lien on the property located at 21 S. Peninsula Drive, Daytona Beach, Florida 32118.

V2.     Class 74- RBJ (21 S. Peninsula Dr.)

Class 74 consists of the Allowed Secured Claim of RBJ, which arises from a pre-petition loan, in the original principal amount of $26,500.00, with original lender Concord Mortgage Company. The Claim of RBJ is allegedly secured by a second priority mortgage Lien on the property located at 21 S. Peninsula Drive, Daytona Beach, Florida 32118.

W2.     Class 75- Bank of New York (25 S. Peninsula Dr.)

Class 75 consists of the Allowed Secured Claim of the Bank of New York, which arises from a pre-petition loan, in the original principal amount of $160,000.00, with original lender Cimarron Mortgage Company. The Claim of the Bank of New York is allegedly secured by a first priority mortgage Lien on the property located at 25 S. Peninsula Drive, Daytona

Beach, Florida 32118.

X2.    Class 76- R-G Crown Bank  (442 Peninsula Dr.)

Class 76 consists of the Allowed Secured Claim of R-G Crown Bank, which arises from a pre-petition loan, in the original principal amount of $390,000.00, with original lender R-G Crown Bank.  The Claim of R-G Crown Bank is allegedly secured by a first priority mortgage Lien on the property located at 442 Peninsula Drive, Daytona Beach, Florida 32118.

Y2.    Class 77-Wells Fargo  (514 Phoenix)

Class 77 consists of the Allowed Secured Claim of Wells Fargo, which arises from a pre-petition loan, in the original principal amount of $246,500.00, with original lender Wells Fargo.  The Claim of Wells Fargo is allegedly secured by a first priority mortgage Lien on the property located at 514 Phoenix Avenue, Daytona Beach, Florida 32118.

Z2.    Class 78- Trailwood 8 (Trailwood Lots)

Class 78 consists of the Allowed Secured Claim of Trailwood 8, which arises from a pre-petition loan, in the original principal amount of $210,000.00, with Trailwood 8.  The Claim of Trailwood 8 is allegedly secured by a first priority mortgage Lien on the property known as Lot 19, 20, 21, 22, 23, and 24 in Trailwood Village at Willow Trail Run, Port Orange, Florida 32127.

A3.    Class 79-Resmae Mortgage  (129 Wild Olive)

Class 79 consists of the Allowed Secured Claim of Resmae Mortgage, which arises from a pre-petition loan, in the original principal amount of $243,000.00, with original lender Resmae Mortgage.  The Claim of Resmae Mortgage is allegedly secured by a first priority mortgage Lien on the property located at 129 South Wild Olive Avenue, Daytona Beach, Florida

38

32118.

B3.   Class 80-Resource Bank  (129 Wild Olive)

Class 80 consists of the Allowed Secured Claim of Resource Bank, which arises from a pre-petition loan, in the original principal amount of $30,150.00, with original lender Resource Bank.  The Claim of Resource Bank is allegedly secured by a second priority mortgage Lien on the property located at 129 South Wild Olive Avenue, Daytona Beach, Florida 32118.

C3.   Class 81-Woodlea Investment  (Monroe Lot 23)

Class 81 consists of the Allowed Secured Claim of Woodlea Investment, which arises from a pre-petition loan, in the original principal amount of $34,500.00 with Woodlea Investment.  The Claim of Woodlea Investment is allegedly secured by a first priority mortgage Lien on the property located at Monroe Street, Lot 23, Port Orange, Florida 32127.

D3.   Class 82-Sunshine State Community Bank (817 Big Tree Road)

Class 82 consists of the Allowed Secured Claim of Sunshine State Community Bank, which arises from a pre-petition loan, in the original principal amount of $71,300.00 with Sunshine State Community Bank.  The Claim of Sunshine State Community Bank is allegedly secured by a first priority mortgage Lien on the property located at 817 Big Tree Road, South Daytona, Florida 32118.

E3.   Class 83 - General Unsecured Claims.

Class 83 consists of the Allowed Unsecured Claims of all Unsecured Creditors of the Debtors, except as otherwise provided under the Plan.

F4.   Class 84 - All Equity Interests.

Class 84 consists of any and all Equity Interests in GEA Investments.

## ARTICLE III - ADMINISTRATIVE EXPENSES.

    A.    <u>Administrative Claims</u>.

        1.    <u>Nonordinary Course Administrative Claims</u>.

            1.    Any person, including any professional who has rendered services to the Debtors during the course of the Case, that asserts an Administrative Claim arising before the Confirmation Date, including Claims under Section 503(b) of the Code, but excluding Ordinary Course Administrative Claims as discussed below, shall, on or before the Administrative Claims Bar Date or other date as set by Bankruptcy Court order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of and basis for such Claim; *provided, however,* that applicants or movants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim. Failure to file a timely application, motion, or request for allowance pursuant to this Section by any holder of a Nonordinary Course Administrative Expense Claim, other than such a holder engaged or employed by the Debtors shall bar such a claimant from seeking recovery on such Claim.

            2.    Each holder of a Nonordinary Course Administrative Claim shall be paid by the Debtors one hundred percent (100%) of its Allowed Claim in Cash, unless otherwise ordered by the Court, on the Effective Date, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Court.

2.     Ordinary Course Administrative Claims.  Ordinary Course Administrative

Claims will be resolved through the performance of the obligation by Debtors in accordance with

the terms and conditions of the agreement or applicable law giving rise thereto.  An applicant for

such Claim need not file an application, motion, or request to protect its rights with respect to

Ordinary Course Administrative Claims.

B.     Tax Claims.

Except to the extent that the Holder and the Debtors have agreed or may agree to

a different treatment, each Holder of an Allowed Priority Tax Claim[2] shall be paid, by the

Debtors, payments equal to the Allowed Priority Tax Claim, which will be paid based on a five

(5) year amortization and maturity with interest at six percent (6%) per annum; the payments will

be made quarterly.  Payments will commence on the later of the Confirmation Date or on such

date as a respective Priority Tax Claim becomes Allowed.  The Debtors estimate that the filed

amount of Priority Tax Claims is approximately $545,831.34; however, the Debtors believe that

the total amount of Allowed Priority Tax Claims will be significantly reduced.

## ARTICLE IV - TREATMENT OF UNIMPAIRED CLASSES.

A.     Class 1 –Daimler Chrysler Financial Services.

Class 1 is unimpaired.  The Class 1 Claim consists of an automobile loan in the

principal amount of $12,544.10, which is secured by a Lien on a 2004 Dodge Truck Dakota, VIN

number 1D7HW58N46S544549.  In full satisfaction of the Allowed Secured Class 1 Claim,

Aberman shall make monthly payments of $303.38, in accordance with the Retail Installment

---

[2] To the extent any part of an Allowed Priority Tax Claim does not qualify for priority treatment under 11 U.S.C. §507(a)(8), such Claim will be treated as a general unsecured claim under Class 83.

Contract, until such time as the Claim is paid in full. Daimler Chrysler Financial Services shall retain its Lien on the vehicle.

      B.    <u>Class 84 - All Equity Interests</u>.

      Class 84 consists of any and all Equity Interests in GEA Seaside Investments, Inc. Class 84 consists of the common stock, of which one hundred percent (100%) of the shares are owned by Jack Aberman (the "Equity Interests"). All currently issued or authorized Equity Interests in GEA Seaside Investments, Inc. shall be retained by Jack Aberman.

## ARTICLE V - TREATMENT OF IMPAIRED CLASSES OF CLAIMS.

      A.    <u>Determination of Allowed Amounts</u>.

      Treatment prescribed for Claims and Interests in the following sections of this Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement or Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, the Debtors respectively reserve the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and nonbankruptcy law as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

      A.    <u>Class 2 – US Bank National (316 Butler Blvd.)</u>.

      Class 2 consists of the Allowed Secured Claim of US Bank National, which arises from a pre-petition loan, in the original principal amount of $229,500.00 with the original lender Acoustic Home Loans, LLC. The Claim of US Bank National is allegedly secured by a first priority mortgage Lien on the property located at 316 Butler Boulevard, Daytona Beach, Florida

32118. In full satisfaction of the Allowed Class 2 Secured Claim, US Bank National shall be deemed to have an Allowed Secured Claim in the amount of $104,356.56. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 2 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 2 Claim and the US Bank National's Allowed Claim shall be deemed an Unsecured Claim, pursuant to 11 U.S.C. §506, and shall be treated as a Class 83 Unsecured Claim and paid accordingly.

      B.    <u>Class 3-Washington Mutual (318 Butler Blvd.).</u>

      Class 3 consists of the Allowed Secured Claim of Washington Mutual, which arises from a pre-petition loan in the original principal amount of $157,500.00 with the original lender Long Beach Mortgage Company. The Claim of Washington Mutual is allegedly secured by a first priority mortgage Lien on the property located at 318 Butler Boulevard, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 3 Secured Claim, Washington Mutual shall be deemed to have an Allowed Secured Claim in the amount of $63,920.00. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 3 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 3 Claim and the Washington Mutual's

Allowed Claim shall be deemed an Unsecured Claim, pursuant to 11 U.S.C. §506, and shall be treated as a Class 83 Unsecured Claim and paid accordingly.

      D.    <u>Class 4- Saxon Mortgage  (311 N. Hollywood ½)</u>

      Class 4 consists of the Allowed Secured Claim of Saxon Mortgage, which arises from a pre-petition loan in the original principal amount of $120,000.00 with the original lender Novastar Mortgage, Inc.  The Claim of Saxon Mortgage is allegedly secured by a first priority mortgage Lien on the property located at 311 N. Hollywood Drive ½, Daytona Beach, Florida 32119.   In full satisfaction of the Allowed Class 4 Secured Claim, Saxon Mortgage shall be deemed to have an Allowed Secured Claim in the amount of $115,538.00.  The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date.  The Allowed Secured Class 4 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest.  Interest will commence on the Effective Date and the first payment due thirty days thereafter.  Any difference between the amount of the Allowed Secured Class 4 Claim and the Saxon Mortgage's Allowed Claim shall be deemed an Unsecured Claim, pursuant to 11 U.S.C. §506, and shall be treated as a Class 83 Unsecured Claim and paid accordingly.

      E.    <u>Class 5- Wachovia Bank (311 N. Hollywood ½)</u>.

      Class 5 consists of the Allowed Secured Claim of Wachovia Bank, which arises from a pre-petition prime equity line of credit loan, in the amount of $61,000.00.  The Claim of Wachovia Bank is allegedly secured by a second priority Lien on the property located at 311 N. Hollywood Drive ½, Daytona Beach, Florida 32119.   The Allowed Secured Class 5 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. §506, and paid accordingly

44

F.  Class 6-US Bank National (315 1/2 Hollywood)

Class 6 consists of the Allowed Secured Claim of US Bank National, which arises from a pre-petition loan, in the original principal amount of $123,750.00 with the original lender Resource Bank. The Claim of US Bank National is allegedly secured by a first priority mortgage Lien on 315 ½ North Hollywood Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 6 Secured Claim, US Bank National shall be deemed to have an Allowed Secured Claim in the amount of $56,248.60. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 6 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 6 Claim and the US Bank National's Allowed Claim shall be treated as a Class 83 Unsecured Claim and paid accordingly.

G.  Class 7- Resource Bank (315 ½ Hollywood)

Class 7 consists of the Allowed Secured Claim of Resource Bank, which arises from a pre-petition loan, in the original principal amount of $24,750.00 with Resource Bank. The Claim of Resource Bank is allegedly secured by a second priority mortgage Lien on 315 ½ North Hollywood Daytona Beach, Florida 32118. The Allowed Secured Class 7 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. §506, and paid accordingly.

H.  Class 8- GMAC Mortgage (319 Hollywood).

Class 8 consists of the Allowed Secured Claim of GMAC Mortgage, which arises from a pre-petition loan, in the original principal amount of $252,000.00, with the original lender

45

Option One Mortgage Corporation. The Claim of GMAC Mortgage is allegedly secured by a first priority mortgage Lien on the property located at 319 Hollywood Avenue, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 8 Secured Claim, GMAC Mortgage shall be deemed to have an Allowed Secured Claim in the amount of $86,413.40. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 8 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 8 Claim and GMAC Mortgage's Allowed Claim shall be treated as a Class 83 Unsecured Claim and paid accordingly.

I.    Class 9- Homecomings Financial (308 N. Peninsula)

Class 9 consists of the Allowed Secured Claim of Homecomings Financial, which arises from a pre-petition loan, in the original principal amount of $267,750.00, with the original lender Homeview Lending, Inc. The Claim of Homecomings Financial is allegedly secured by a first priority mortgage Lien on the property located at 308 N. Peninsula Drive, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 9 Secured Claim, Homecomings Financial shall be deemed to have an Allowed Secured Claim in the amount of $168,046.13. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 9 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter.

46

Any difference between the amount of the Allowed Secured Class 9 Claim and Homecomings Financial's Allowed Claim shall be treated as a Class 83 Unsecured Claim and paid accordingly.

K. <u>Class 10- Citibank  (312 N. Peninsula)</u>

Class 10 consists of the Allowed Secured Claim of Citibank, N.A., which arises from a pre-petition loan, in the original principal amount of $200,000.00, with the original lender Maryland Banking Corporation.  The Claim of Citibank is allegedly secured by a first priority mortgage Lien on the property located at 312 N. Peninsula Drive, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 10 Secured Claim, Citibank shall be deemed to have an Allowed Secured Claim in the amount of $87,374.27.  The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date.  The Allowed Secured Class 10 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest.  Interest will commence on the Effective Date and the first payment due thirty days thereafter.  Any difference between the amount of the Allowed Secured Class 10 Claim and Citibank's Allowed Claim shall be treated as a Class 83 Unsecured Claim and paid accordingly.

L. <u>Class 11- GMAC Mortgage  (312 N. Peninsula)</u>

Class 11 consists of the Allowed Secured Claim of GMAC Mortgage, which arises from a pre-petition loan, in the original principal amount of $25,000.00, with the original lender First Mariner Bank.  The Claim of GMAC Mortgage is allegedly secured by a second priority mortgage Lien on the property located at 312 N. Peninsula Drive, Daytona Beach, Florida 32118.  The Allowed Secured Class 11 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. §506, and paid accordingly.

M.     Class 12-First Mariner Bank (320 N. Peninsula)

Class 12 consists of the Allowed Secured Claim of First Mariner Bank, which arises from a pre-petition loan, in the original principal amount of $208,000.00, with First Mariner Bank. The Claim of First Mariner Bank is allegedly secured by a first priority mortgage Lien on the property located at 320 N. Peninsula Drive, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 12 Secured Claim, First Mariner Bank shall be deemed to have an Allowed Secured Claim in the amount of $128,551.43. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 12 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 12 Claim and First Mariner Bank's Allowed Claim shall be treated as a Class 83 Unsecured Claim and paid accordingly.

N.     Class 13-First Mariner Bank (320 N. Peninsula)

Class 13 consists of the Allowed Secured Claim of First Mariner Bank, which arises from a pre-petition loan, in the original principal amount of $26,000.00, with First Mariner Bank. The Claim of First Mariner Bank is allegedly secured by a second priority mortgage Lien on the property located at 320 N. Peninsula Drive, Daytona Beach, Florida 32118. The Allowed Secured Class 13 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. §506, and paid accordingly.

O.     Class 14-US Bank National (324 N. Peninsula)

Class 14 consists of the Allowed Secured Claim of US Bank National, which arises from a pre-petition loan, in the original principal amount of $288,000.00, with original lender Option One Mortgage Corporation. The Claim of US Bank National is allegedly secured by a first priority mortgage Lien on the property located at 324 N. Peninsula Drive, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 14 Secured Claim, US Bank National shall be deemed to have an Allowed Secured Claim in the amount of $129,247.28. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 14 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 14 Claim and US Bank National's Allowed Claim shall be treated as a Class 83 Unsecured Claim and paid accordingly.

P.    Class 15-HSBC Bank (330 N. Peninsula)

Class 15 consists of the Allowed Secured Claim of HSBC Bank, which arises from a pre-petition loan, in the original principal amount of $306,000.00, with original lender Option One Mortgage Corporation. The Claim of HSBC Bank is allegedly secured by a first priority mortgage Lien on the property located at 330 N. Peninsula Drive, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 15 Secured Claim, HSBC Bank shall be deemed to have an Allowed Secured Claim in the amount of $194,424.09. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 15 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization

49

and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 15 Claim and HSBC Bank's Allowed Claim shall be treated as a Class 83 Unsecured Claim and paid accordingly.

Q.  Class 16-Homecomings Financial (3764 Cardinal)

Class 16 consists of the Allowed Secured Claim of Homecomings Financial, which arises from a pre-petition loan, in the original principal amount of $256,500.00, with original lender First Guaranty Mortgage Corporation. The Claim of Homecomings Financial is allegedly secured by a first priority mortgage Lien on the property located at 3764 Cardinal Blvd, Port Orange, Florida 32127. In full satisfaction of the Allowed Class 16 Secured Claim, Homecomings Financial shall be deemed to have an Allowed Secured Claim in the amount of $114,153.05. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same extent, validity, and priority as existed as of Petition Date. The Allowed Secured Class 16 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 16 Claim and Homecomings Financial's Allowed Claim shall be treated as a Class 83 Unsecured Claim and paid accordingly.

R.  Class 17-RBJ (3790 Cardinal)

Class 17 consists of the Allowed Secured Claim of RBJ, which arises from a pre-petition loan, in the original principal amount of $228,000.00, with original lender Concord Mortgage Company. The Claim of RBJ is allegedly secured by a first priority mortgage Lien on

the property located at 3790 Cardinal Blvd, Port Orange, Florida 32127. In full satisfaction of the Allowed Class 17 Secured Claim, RBJ shall be deemed to have an Allowed Secured Claim in the amount of $127,224.98. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 17 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 17 Claim and RBJ's Allowed Claim shall be treated as a Class 83 Unsecured Claim and paid accordingly.

S.    <u>Class 18-RBJ (3790 Cardinal)</u>

Class 18 consists of the Allowed Secured Claim of RBJ, which arises from a pre-petition loan, in the original principal amount of $28,500.00, with original lender Concord Mortgage Company. The Claim of RBJ is allegedly secured by a second priority mortgage Lien on the property located at 3790 Cardinal Blvd, Port Orange, Florida 32127. The amount of the Allowed Secured Class 18 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. §506, and paid accordingly.

S.    <u>Class 19-HSBC Bank–(100 Carolyn)</u>

Class 19 consists of the Allowed Secured Claim of HSBC Bank, which arises from a pre-petition loan, in the original principal amount of $276,300.00, with original lender Option One Mortgage Corporation. The Claim of HSBC Bank is allegedly secured by a first priority mortgage Lien on the property located at 100 Carolyn Terrace, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 19 Secured Claim, HSBC Bank shall be deemed

to have an Allowed Secured Claim in the amount of $150,722.81. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 19 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 19 Claim and HSBC Bank's Allowed Claim shall be treated as a Class 83 Unsecured Claim and paid accordingly.

    T.    <u>Class 20-First Horizon (101 Carolyn)</u>

    Class 20 consists of the Allowed Secured Claim of First Horizon, which arises from a pre-petition loan, in the original principal amount of $204,000.00, with First Horizon. The Claim of First Horizon is allegedly secured by a first priority mortgage Lien on the property located at 101 Carolyn Terrace, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 20 Secured Claim, First Horizon shall be deemed to have an Allowed Secured Claim in the amount of $140,595.58. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 20 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 20 Claim and First Horizon's Allowed Claim shall be treated as a Class 83 Unsecured Claim and paid accordingly.

    U.    <u>Class 21-First Horizon (101 Carolyn)</u>

Class 21 consists of the Allowed Secured Claim of First Horizon, which arises from a pre-petition loan, in the original principal amount of $25,500.00, with First Horizon. The Claim of First Horizon is allegedly secured by a second priority mortgage Lien on the property located at 101 Carolyn Terrace, Daytona Beach, Florida 32118. The Allowed Secured Class 21 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. § 506, and paid accordingly.

V.    <u>Class 22-RBJ (3 Carter)</u>

Class 22 consists of the Allowed Secured Claim of RBJ, which arises from a pre-petition loan, in the original principal amount of $208,000.00, with original lender Concord Mortgage Company. The Claim of RBJ is allegedly secured by a first priority mortgage Lien on the property located at 3 Carter Terrace, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 22 Secured Claim, RBJ shall be deemed to have an Allowed Secured Claim in the amount of $97,143.00. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 22 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 22 Claim and RBJ's Allowed Claim shall be treated as a Class 83 Unsecured Claim and paid accordingly.

W.    <u>Class 23-RBJ (3 Carter)</u>

Class 23 consists of the Allowed Secured Claim of RBJ, which arises from a pre-petition loan, in the original principal amount of $26,000.00, with original lender Concord

Mortgage Company. The Claim of RBJ is allegedly secured by a second priority mortgage Lien on the property located at 3 Carter Terrace, Daytona Beach, Florida 32118. The Allowed Secured Class 23 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. § 506, and paid accordingly.

X.    Class 24-Bank of New York (109 Raymond Ave)

Class 24 consists of the Allowed Secured Claim of the Bank of New York, which arises from a pre-petition loan, in the original principal amount of $298,800.00, with original lender First Guaranty Mortgage Corporation. The Claim of Bank of New York is allegedly secured by a first priority mortgage Lien on the property located at 109 Raymond Avenue, Port Orange, Florida 32127. In full satisfaction of the Allowed Class 24 Secured Claim, Bank of New York shall be deemed to have an Allowed Secured Claim in the amount of $110,701.18. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same extent, validity, and priority as existed as of Petition Date. The Allowed Secured Class 23 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 24 Claim and Bank of New York's Allowed Claim shall be treated as a Class 83 Unsecured Claim and paid accordingly.

Y.    Class 25-H & R Block Bank -(206 S. Venetian)

Class 25 consists of the Allowed Secured Claim of H&R Block Bank, which arises from a pre-petition loan, in the original principal amount of $292,500.00, with original lender Option One Mortgage Corporation. The Claim of H&R Block Bank is allegedly secured

by a first priority mortgage Lien on the property located at 206 Venetian Way, Daytona Beach, Florida 32127-5714. In full satisfaction of the Allowed Class 25 Secured Claim, H&R Block Bank shall be deemed to have an Allowed Secured Claim in the amount of $122,298.48. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 25 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 25 Claim and H&R Block Bank's Allowed Claim shall be treated as a Class 83 Unsecured Claim and paid accordingly.

Z. **Class 26-Wells Fargo (615 Wisteria Road)**

Class 26 consists of the Allowed Secured Claim of Wells Fargo, which arises from a pre-petition loan, in the original principal amount of $280,500.00, with Wells Fargo. The Claim of Wells Fargo is allegedly secured by a first priority mortgage Lien on the property located at 615 Wisteria Road, Daytona Beach, Florida 32127-5714. In full satisfaction of the Allowed Class 26 Secured Claim, Wells Fargo shall be deemed to have an Allowed Secured Claim in the amount of $116,589.00. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 26 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 26 Claim and Wells Fargo's Allowed Claim shall be treated as a Class 83 Unsecured

55

Claim and paid accordingly.

A1.     Class 27-Washington Mutual (2711 N. Halifax #796)

Class 27 consists of the Allowed Secured Claim of Washington Mutual, which arises from a pre-petition loan, in the original principal amount of $108,000.00, with original lender Long Beach Mortgage Company. The Claim of Washington Mutual is allegedly secured by a first priority mortgage Lien on the property located at 2711 N. Halifax Avenue, #796, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 27 Secured Claim, Washington Mutual shall be deemed to have an Allowed Secured Claim in the amount of $75,221.79. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 27 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 27 Claim and Washington Mutual's Allowed Claim shall be treated as a Class 83 Unsecured Claim and paid accordingly.

B1.     Class 28-Homecomings Financial (121 Grandview)

Class 28 consists of the Allowed Secured Claim of Homecomings Financial, which arises from a pre-petition loan, in the original principal amount of $255,000.00, with original lender Homeview Lending, Inc. The Claim of Homecoming Financial is allegedly secured by a first priority mortgage Lien on the property located at 121 Grandview, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 28 Secured Claim, Homecomings Financial shall be deemed to have an Allowed Secured Claim in the amount of

$159,072.18. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 28 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 28 Claim and Homecomings Financial's Allowed Claim shall be treated as a Class 83 Unsecured Claim and paid accordingly.

     C1.    Class 29-First Horizon (509 Harvey Ave)

     Class 29 consists of the Allowed Secured Claim of First Horizon, which arises from a pre-petition loan, in the original principal amount of $103,900.00, with First Horizon. The Claim of First Horizon is allegedly secured by a first priority mortgage Lien on the property located at 509 Harvey Avenue, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 29 Secured Claim, First Horizon shall be deemed to have an Allowed Secured Claim in the amount of $60,103.00. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 29 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 29 Claim and First Horizon's Allowed Claim shall be treated as a Class 83 Unsecured Claim and paid accordingly.

     D1.    Class 30-HSBC Bank (509 Harvey Ave)

Class 30 consists of the Allowed Secured Claim of HSBC Bank, which arises from a pre-petition loan, in the original principal amount of $12,990.00, with original lender First Horizon Home Loan Corporation. The Claim of HSBC Bank is allegedly secured by a second priority mortgage Lien on the property located at 509 Harvey Avenue, Daytona Beach, Florida 32118. The Allowed Secured Class 30 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. §506, and paid accordingly.

E1.     Class 31-US Bank National (358 Nautilus)

Class 31 consists of the Allowed Secured Claim of US Bank National, which arises from a pre-petition loan, in the original principal amount of $144,000.00, with original lender Argent Mortgage Company, LLC. The Claim of US Bank National is allegedly secured by a first priority mortgage Lien on the property located at 358 Nautilus Avenue, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 31 Secured Claim, US Bank National shall be deemed to have an Allowed Secured Claim in the amount of $68,794.92. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 31 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 31 Claim and US Bank National's Allowed Claim shall be treated as a Class 83 Unsecured Claim and paid accordingly.

F1.     Class 32-US Bank National (115 Ogden)

Class 32 consists of the Allowed Secured Claim of US Bank National, which arises from a pre-petition loan, in the original principal amount of $225,000.00, with original

lender Charles D Robinson III and William T Morrison. The Claim of US Bank National is allegedly secured by a first priority mortgage Lien on the property located at 115 Ogden Blvd. Daytona, Beach Florida 32118. In full satisfaction of the Allowed Class 32 Secured Claim, US Bank National shall be deemed to have an Allowed Secured Claim in the amount of $81,093.30. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 32 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 32 Claim and US Bank National's Allowed Claim shall be treated as a Class 83 Unsecured Claim and paid accordingly.

G1.    <u>Class 33- Charles D Robinson III and William T Morrison (115 Ogden)</u>

Class 33 consists of the Allowed Secured Claim of Charles D Robinson III and William T Morrison, which arises from a pre-petition loan, in the original principal amount of $45,000.00, with original lender Charles D Robinson III and William T Morrison. The Claim of Charles D Robinson III and William T Morrison is allegedly secured by a second priority mortgage Lien on the property located at 115 Ogden Blvd, Daytona, Beach Florida 32118. The Allowed Secured Class 33 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. §506, and paid accordingly.

H1.    <u>Class 34-Wells Fargo (13 S. Peninsula)</u>

Class 34 consists of the Allowed Secured Claim of Wells Fargo, which arises from a pre-petition loan, in the original principal amount of $222,750.00, with Wells Fargo. The

Claim of Wells Fargo is allegedly secured by a first priority mortgage Lien on the property located at 13 S. Peninsula Drive, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 34 Secured Claim, Wells Fargo shall be deemed to have an Allowed Secured Claim in the amount of $117,572.21. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 34 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 34 Claim and the Allowed Claim of Wells Fargo shall be treated as a Class 83 Unsecured Claim and paid accordingly.

    I1.    Class 35- Woodlea Investment (444 N. Peninsula)

Class 35 consists of the Allowed Secured Claim of Woodlea Investment, which arises from a pre-petition loan, in the original principal amount of $180,000.00, with Woodlea Investment. The Claim of Woodlea Investment, is allegedly secured by a first priority mortgage Lien on the property located at 444 N. Peninsula Drive, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 35 Secured Claim, Woodlea Investment shall be deemed to have an Allowed Secured Claim in the amount of $41,734.78. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 35 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the

Allowed Secured Class 35 Claim and the Allowed Claim of Woodlea Investment shall be treated as a Class 83 Unsecured Claim and paid accordingly.

J1.  Class 36-Debra Miller (444 N. Peninsula)

Class 36 consists of the Allowed Secured Claim of Debra Miller, which arises from a pre-petition loan, in the original principal amount of $20,000.00, with Debra Miller. The Claim of Debra Miller is allegedly secured by a second priority mortgage Lien on the property located at 444 N. Peninsula Drive, Daytona Beach, Florida 32118. The Allowed Secured Class 36 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. §506, and paid accordingly.

K1.  Class 37-Fifth Third (508 Eastwood)

Class 37 consists of the Allowed Secured Claim of Fifth Third, which arises from a pre-petition loan, in the original principal amount of $242,582.00, with original lender R-G Crown Bank. The Claim of Fifth Third is allegedly secured by a first priority mortgage Lien on the property located at 508 Eastwood Avenue, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 37 Secured Claim, Fifth Third shall be deemed to have an Allowed Secured Claim in the amount of $71,975.80. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 37 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 37 Claim and the Allowed Claim of Fifth Third shall be treated as a Class 83 Unsecured Claim and paid accordingly.

61

L1.   **Class 38- Wachovia Bank (508 Eastwood)**

Class 38 consists of the Allowed Secured Claim of Wachovia Bank, which arises from a prime equity line of credit loan, in the amount of $141,327.12. The Claim of Wachovia Bank is allegedly secured by a second priority mortgage Lien on the property located at 508 Eastwood Avenue, Daytona Beach, Florida 32118. The Allowed Secured Class 38 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. §506, and paid accordingly.

M1.   **Class 39- Indymac Bank (507 Phoenix)**

Class 39 consists of the Allowed Secured Claim of Indymac Bank, which arises from a pre-petition loan, in the original principal amount of $244,000.00 with original lender 1st Mariner Bank. The Claim of Indymac Bank is allegedly secured by a first priority mortgage Lien on the property located at 507 Phoenix Avenue, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 39 Secured Claim, Indymac Bank shall be deemed to have an Allowed Secured Claim in the amount of $126,798.70. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 39 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 39 Claim and the Allowed Claim of Indymac Bank shall be treated as a Class 83 Unsecured Claim and paid accordingly.

N1.   **Class 40- Citibank (507 Phoenix)**

Class 40 consists of the Allowed Secured Claim of Citibank, which arises from a pre-petition loan, in the original principal amount of $30,500.00 with original lender First

Mariner Bank. The Claim of Citibank is allegedly secured by a second priority mortgage Lien on the property located at 507 Phoenix Avenue, Daytona Beach, Florida 32118. The Allowed Secured Class 40 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. §506, and paid accordingly.

O1.    <u>Class 41-Bayview (420 N. Halifax & 429 N. Peninsula)</u>

Class 41 consists of the Allowed Secured Claim of Bayview, which arises from a pre-petition loan, in the original principal amount of $637,500.00 by and between original lender InterBay Funding, LLC and GEA Seaside and a guaranty of the loan by Aberman. The Claim of Bayview is allegedly secured by a first priority mortgage Lien on the property located at 420 N Halifax Avenue & 429 N. Peninsula Drive, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 41 Secured Claim, Bayview shall be deemed to have an Allowed Secured Claim in the amount of $561,917.93. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 41 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 41 Claim and the Allowed Claim of Bayview shall be treated as a Class 83 Unsecured Claim and paid accordingly.

P1.    <u>Class 42-Edward Nowak Trust (420 N. Halifax & 429 N. Peninsula)</u>

Class 42 consists of the Allowed Secured Claim of Edward Nowak Trust, which arises from a pre-petition loan, in the original principal amount of $85,000.00 with the Edward Nowak Trust. The Claim of the Edward Nowak Trust is allegedly secured by a second priority

mortgage Lien on the property located at 420 N Halifax Avenue & 429 N. Peninsula Drive, Daytona Beach, Florida 32118. The Allowed Secured Class 42 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. §506, and paid accordingly.

Q1.     Class 43-Peoples First Community Bank (434 N. Halifax)

Class 43 consists of the Allowed Secured Claim of Peoples First Community Bank, which arises from a pre-petition loan, in the original principal amount of $340,000.00, with original lender Peoples First Community Bank. The Claim of Peoples First Community Bank is allegedly secured by a first priority mortgage Lien on the property located at 434 N Halifax Avenue, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 43 Secured Claim, Peoples First Community Bank shall be deemed to have an Allowed Secured Claim in the amount of $263,940.49. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 43 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 43 Claim and the Allowed Claim of Peoples First Community Bank shall be treated as a Class 83 Unsecured Claim and paid accordingly.

R1.     Class 44-Wells Fargo (433 N. Peninsula)

Class 44 consists of the Allowed Secured Claim of Wells Fargo, which arises from a pre-petition loan, in the original principal amount of $334,800.00, with Wells Fargo. The Claim of Wells Fargo is allegedly secured by a first priority mortgage Lien on the property located at 433 N. Peninsula Drive, Daytona Beach, Florida 32118. In full satisfaction of the

64

Allowed Class 44 Secured Claim, Wells Fargo shall be deemed to have an Allowed Secured Claim in the amount of $98,482.20. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 44 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 44 Claim and the Allowed Claim of Wells Fargo shall be treated as a Class 83 Unsecured Claim and paid accordingly.

S1.    Class 45-Debra Miller (433 N. Peninsula)

Class 45 consists of the Allowed Secured Claim of Debra Miller, which arises from a pre-petition loan, in the original principal amount of $42,500.00, with Debra Miller. The Claim of Debra Miller is allegedly secured by a second priority mortgage Lien on the property located at 433 N. Peninsula Drive, Daytona Beach, Florida 32118. The Allowed Secured Class 45 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. § 506, and paid accordingly.

T1.    Class 46- Indymac Bank (232 N. Peninsula)

Class 46 consists of the Allowed Secured Claim of Indymac Bank, which arises from a pre-petition loan, in the original principal amount of $236,000.00 with original lender 1st Mariner Bank. The Claim of Indymac Bank is allegedly secured by a first priority mortgage Lien on the property located at 232 N. Peninsula Avenue, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 46 Secured Claim, Indymac Bank shall be deemed to have an Allowed Secured Claim in the amount of $121,368.81. The Allowed Secured Claim shall be

secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 46 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 46 Claim and the Allowed Claim of Indymac Bank shall be treated as a Class 83 Unsecured Claim and paid accordingly.

U1. Class 47- GMAC Mortgage-(232 N. Peninsula)

Class 47 consists of the Allowed Secured Claim of GMAC Mortgage, which arises from a pre-petition loan, in the original principal amount of $29,500.00, with original lender 1st Mariner Bank. The Claim of GMAC Mortgage is allegedly secured by a second priority mortgage Lien on the property located at 232 N. Peninsula Avenue, Daytona Beach, Florida 32118. The Allowed Secured Class 47 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. §506, and paid accordingly.

V1. Class 48- First Mariner Bank (236 N. Peninsula)

Class 48 consists of the Allowed Secured Claim of First Mariner Bank, which arises from a pre-petition loan, in the original principal amount of $232,000.00, with First Mariner Bank. The Claim of First Mariner Bank is allegedly secured by a first priority mortgage Lien on the property located at 236 N. Peninsula Avenue, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 48 Secured Claim, First Mariner Bank shall be deemed to have an Allowed Secured Claim in the amount of $157,536.39. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 48 Claim shall be paid

through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 48 Claim and the Allowed Claim of First Mariner Bank shall be treated as a Class 83 Unsecured Claim and paid accordingly.

W1. Class 49-GMAC Mortgage (236 N. Peninsula)

Class 49 consists of the Allowed Secured Claim of GMAC Mortgage, which arises from a pre-petition loan, in the original principal amount of $29,000.00, with original lender 1st Mariner Bank. The Claim of GMAC Mortgage is allegedly secured by a second priority mortgage Lien on the property located at 236 N. Peninsula Avenue, Daytona Beach, Florida 32118. The Allowed Secured Class 49 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. §506, and paid accordingly.

X1. Class 50- Argent Mortgage Company LLC (420 N. Peninsula)

Class 50 consists of the Allowed Secured Claim of Argent Mortgage Company LLC, which arises from a pre-petition loan, in the original principal amount of $225,000.00, with original lender Argent Mortgage Company, LLC. The Claim of Argent Mortgage Company LLC is allegedly secured by a first priority mortgage Lien on the property located at 420 N. Peninsula Avenue, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 50 Secured Claim, Argent Mortgage Company LLC shall be deemed to have an Allowed Secured Claim in the amount of $111,969.05. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 50 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six

percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 50 Claim and the Allowed Claim of Argent Mortgage Company LLC shall be treated as a Class 83 Unsecured Claim and paid accordingly.

Y1.    Class 51-US Bank National (428 N. Peninsula)

Class 51 consists of the Allowed Secured Claim of US Bank National, which arises from a pre-petition loan, in the original principal amount of $226,500.00, with original lender Charles D Robinson, III and William T. Morrison. The Claim of US National Bank is allegedly secured by a first priority mortgage Lien on the property located at 428 N. Peninsula Avenue, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 51 Secured Claim, US Bank National shall be deemed to have an Allowed Secured Claim in the amount of $124,269.00. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 51 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 51 Claim and the Allowed Claim of US Bank National shall be treated as a Class 83 Unsecured Claim and paid accordingly.

Z1.    Class 52-Charles D Robinson, III and William T Morrison (428 N. Peninsula)

Class 52 consists of the Allowed Secured Claim of Charles D Robinson, III and William T Morrison, which arises from a pre-petition loan, in the original principal amount of $45,300.00, with original lender Charles D Robinson, III and William T. Morrison. The Claim

of Charles D Robinson, III and William T Morrison is allegedly secured by a second priority mortgage Lien on the property located at 428 N. Peninsula Avenue, Daytona Beach, Florida 32118. The amount of the Allowed Secured Class 52 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. §506, and paid accordingly.

A2.     Class 53-Homecomings Financial (1928 Marilyn)

Class 53 consists of the Allowed Secured Claim of Homecomings Financial, which arises from a pre-petition loan, in the original principal amount of $243,000.00, with original lender Homeview Lending, Inc. The Claim of Homecomings Financial is allegedly secured by a first priority mortgage Lien on the property located at 1928 Marilyn Street, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 53 Secured Claim, Homecomings Financial shall be deemed to have an Allowed Secured Claim in the amount of $83,373.95. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 53 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 53 Claim and the Allowed Claim of Homecomings Financial shall be treated as a Class 83 Unsecured Claim and paid accordingly.

B2.     Class 54-Indymac Bank (244-1 Poinciana)

Class 54 consists of the Allowed Secured Claim of Indymac Bank, which arises from a pre-petition loan, in the original principal amount of $255,000.00, with original lender Homeview Lending, Inc. The Claim of Indymac Bank is allegedly secured by a first priority

mortgage Lien on the property located at 244-1 Poinciana Avenue, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 54 Secured Claim, Indymac Bank shall be deemed to have an Allowed Secured Claim in the amount of $116,849.85. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 54 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 54 Claim and the Allowed Claim of Indymac Bank shall be treated as a Class 83 Unsecured Claim and paid accordingly.

C2.     Class 55-US Bank National (216 Morningside)

Class 55 consists of the Allowed Secured Claim of US Bank National, which arises from a pre-petition loan, in the original principal amount of $255,000.00, with original lender Option One Mortgage Corporation. The Claim of US Bank National is allegedly secured by a first priority mortgage Lien on the property located at 216 Morningside Drive, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 55 Secured Claim, US Bank National shall be deemed to have an Allowed Secured Claim in the amount of $100,257.04. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 55 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 55 Claim and the Allowed Claim of US Bank

National shall be treated as a Class 83 Unsecured Claim and paid accordingly.

D2.     Class 56-National City (Monroe Street, Lot 23)

Class 56 consists of the Allowed Secured Claim of National City, which arises from a pre-petition loan, in the original principal amount of $152,800.00, with original lender Harbor Federal Savings Bank.  The Claim of National City is allegedly secured by a first priority mortgage Lien on the property located at Monroe Street, Lot 23, Port Orange, Florida 32127.  In full satisfaction of the Allowed Class 56 Secured Claim, National City shall be deemed to have an Allowed Secured Claim in the amount of $21,269.45.  The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date.  The Allowed Secured Class 56 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest.  Interest will commence on the Effective Date and the first payment due thirty days thereafter.  Any difference between the amount of the Allowed Secured Class 56 Claim and the Allowed Claim of National City shall be treated as a Class 83 Unsecured Claim and paid accordingly.

E2.     Class 57-Washington Mutual-(28000 Atlantic Ave. Unit #201)

Class 57 consists of the Allowed Secured Claim of Washington Mutual, which arises from a pre-petition loan, in the original principal amount of $175,500.00, with original lender Long Beach Mortgage Company.  The Claim of Washington Mutual is allegedly secured by a first priority mortgage Lien on the property located at 2800 N. Atlantic Avenue, Apt. 201, Daytona Beach, Florida 32118.  Washington Mutual shall receive, in full satisfaction of its claim, the property located at 2800 N. Atlantic Avenue, Apt. 201, Daytona Beach, Florida, as the indubitable equivalent of its Allowed Secured Claim, pursuant to 11 U.S.C. §1129(b)(2)(A)(iii).

Any difference between the amount of the Allowed Secured Class 57 Claim and the Allowed Claim of Washington Mutual shall be treated as a Class 83 Unsecured Claim and paid accordingly.

F2.     Class 58-Novelle Financial (28000 Atlantic Ave. Unit #409)

Class 58 consists of the Allowed Secured Claim of Novelle Financial, which arises from a pre-petition loan, in the original principal amount of $140,250.00, with original lender Novelle Financial Services. The Claim of Novelle Financial is allegedly secured by a first priority mortgage Lien on the property located at 2800 N. Atlantic Avenue, Apt. 409, Daytona Beach, Florida 32118. Novelle Financial shall receive, in full satisfaction of its claim, the property located at 2800 N. Atlantic Avenue, Apt. 409, Daytona Beach, Florida, as the indubitable equivalent of its Allowed Secured Claim, pursuant to 11 U.S.C. §1129(b)(2)(A)(iii). Any difference between the amount of the Allowed Secured Class 58 Claim and the Allowed Claim of Novelle Financial shall be treated as a Class 83 Unsecured Claim and paid accordingly.

G2.     Class 59- Washington Mutual (28000 Atlantic Ave. Unit #511)

Class 59 consists of the Allowed Secured Claim of Washington Mutual, which arises from a pre-petition loan, in the original principal amount of $144,900.00, with original lender Long Beach Mortgage Company. The Claim of Washington Mutual is allegedly secured by a first priority mortgage Lien on the property located at 2800 N. Atlantic Avenue, Apt. 511, Daytona Beach, Florida 32118. Washington Mutual shall receive, in full satisfaction of its claim, the property located at 2800 N. Atlantic Avenue, Apt. 511, Daytona Beach, Florida, as the indubitable equivalent of its Allowed Secured Claim, pursuant to 11 U.S.C. §1129(b)(2)(A)(iii). Any difference between the amount of the Allowed Secured Class 59 Claim and the Allowed Claim of Washington Mutual shall be treated as a Class 83 Unsecured Claim and paid

accordingly.

H2.   Class 60- Homecomings Financial (28000 Atlantic Ave. Unit #801)

Class 60 consists of the Allowed Secured Claim of Homecomings Financial, which arises from a pre-petition loan, in the original principal amount of $231,920.00, with original lender Cimarron Mortgage Company.   The Claim of Homecomings Financial is allegedly secured by a first priority mortgage Lien on the property located at 2800 N. Atlantic Avenue, Apt. 801, Daytona Beach, Florida 32118.  Homecomings Financial shall receive, in full satisfaction of its claim, the property located at 2800 N. Atlantic Avenue, Apt. 801, Daytona Beach, Florida, as the indubitable equivalent of its Allowed Secured Claim, pursuant to 11 U.S.C. §1129(b)(2)(A)(iii).  Any difference between the amount of the Allowed Secured Class 60 Claim and the Allowed Claim of Homecomings Financial shall be treated as a Class 83 Unsecured Claim and paid accordingly.

I2.   Class 61- US Bank National  (28000 Atlantic Ave. Unit #1202)

Class 61 consists of the Allowed Secured Claim of US Bank National, which arises from a pre-petition loan, in the original principal amount of $189,000.00, with original lender Argent Mortgage Company, LLC.  The Claim of US Bank National is allegedly secured by a first priority mortgage Lien on the property located at 2800 N. Atlantic Avenue, Apt. 1202, Daytona Beach, Florida 32118.  US Bank National shall receive, in full satisfaction of its claim, the property located at 2800 N. Atlantic Avenue, Apt. 1202, Daytona Beach, Florida, as the indubitable equivalent of its Allowed Secured Claim, pursuant to 11 U.S.C. §1129(b)(2)(A)(iii). Any difference between the amount of the Allowed Secured Class 61 Claim and the Allowed Claim of US Bank National shall be treated as a Class 83 Unsecured Claim and paid accordingly.

J2.   Class 62- Sunshine State Community Bank  (37 S. Grandview)

Class 62 consists of the Allowed Secured Claim of Sunshine State Community Bank, which arises from a pre-petition loan, in the original principal amount of $157,500.00, with original lender Sunshine State Community Bank. The Claim of Sunshine State Community Bank is allegedly secured by a first priority mortgage Lien on the property located at 37 S. Grandview Avenue, Daytona Beach, Florida 32118. Sunshine State Community Bank shall receive, in full satisfaction of its claim, the property located at 37 S. Grandview Avenue, Daytona Beach, Florida 32118, as the indubitable equivalent of its Allowed Secured Claim, pursuant to 11 U.S.C. §1129(b)(2)(A)(iii). Any difference between the amount of the Allowed Secured Class 62 Claim and the Allowed Claim of Sunshine Community Bank shall be treated as a Class 83 Unsecured Claim and paid accordingly.

K2.     Class 63- Linda Justice (37 S. Grandview)

Class 63 consists of the Allowed Secured Claim of Linda Justice, which arises from a pre-petition loan, in the original principal amount of $18,400.00, with Linda Justice. The Claim of Linda Justice is allegedly secured by a second priority mortgage Lien on the property located at 37 S. Grandview Avenue, Daytona Beach, Florida 32118. The amount of the Allowed Secured Class 63 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. §506, and paid accordingly

L2.     Class 64- IndyMac Bank (38 S. Grandview)

Class 64 consists of the Allowed Secured Claim of IndyMac Bank, which arises from a pre-petition loan, in the original principal amount of $272,000.00, with original lender First Mariner Bank. The Claim of IndyMac Bank is allegedly secured by a first priority mortgage Lien on the property located at 38 S. Grandview Avenue, Daytona Beach, Florida 32118. IndyMac Bank shall receive, in full satisfaction of its claim, the property located at 38 S.

Grandview Avenue, Daytona Beach, Florida 32118, as the indubitable equivalent of its Allowed Secured Claim, pursuant to 11 U.S.C. §1129(b)(2)(A)(iii). Any difference between the amount of the Allowed Secured Class 64 Claim and the Allowed Claim of IndyMac Bank shall be treated as a Class 83 Unsecured Claim and paid accordingly.

M2. Class 65- Citibank (38 S. Grandview)

Class 65 consists of the Allowed Secured Claim of Citibank, which arises from a pre-petition loan, in the original principal amount of $34,000.00, with original lender First Mariner Bank. The Claim of Citibank is allegedly secured by a second priority mortgage Lien on the property located at 38 S. Grandview Avenue, Daytona Beach, Florida 32118. The amount of the Allowed Secured Class 65 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. §506, and paid accordingly.

N2. Class 66- Resmae Mortgage (229 N. Hollywood Ave.)

Class 66 consists of the Allowed Secured Claim of Resmae Mortgage, which arises from a pre-petition loan, in the original principal amount of $220,500.00, with original lender Resmae Mortgage. The Claim of Resmae Mortgage is allegedly secured by a first priority mortgage Lien on the property located at 229 North Hollywood Avenue, Daytona Beach, Florida 32118. . In full satisfaction of the Allowed Class 66 Secured Claim, Resmae Mortgage shall be deemed to have an Allowed Secured Claim in the amount of $67,995.61. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 66 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the

amount of the Allowed Secured Class 66 Claim and the Allowed Claim of Resmae Mortgage shall be treated as a Class 83 Unsecured Claim and paid accordingly.

O2. Class 67-Citibank  (231 N. Hollywood Ave.)

Class 67 consists of the Allowed Secured Claim of Citibank, which arises from a pre-petition loan, in the original principal amount of $230,400.00, with original lender First Mariner Bank.  The Claim of Citibank is allegedly secured by a first priority mortgage Lien on the property located at 231 North Hollywood Avenue, Daytona Beach, Florida 32118.  In full satisfaction of the Allowed Class 67 Secured Claim, Citibank shall be deemed to have an Allowed Secured Claim in the amount of $143,701.21.  The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date.  The Allowed Secured Class 67 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest.  Interest will commence on the Effective Date and the first payment due thirty days thereafter.  Any difference between the amount of the Allowed Secured Class 67 Claim and the Allowed Claim of Citibank shall be treated as a Class 83 Unsecured Claim and paid accordingly.

P2. Class 68-GMAC Mortgage  (231 N. Hollywood Ave.)

Class 68 consists of the Allowed Secured Claim of GMAC Mortgage, which arises from a pre-petition loan, in the original principal amount of $28,800.00, with original lender 1st Mariner Bank.  The Claim of GMAC Mortgage is allegedly secured by a second priority mortgage Lien on the property located at 231 North Hollywood Avenue, Daytona Beach, Florida 32118.  The amount of the Allowed Secured Class 68 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. §506, and paid accordingly

Q2.    Class 69- IndyMac Bank (240 N. Hollywood Ave.)

Class 69 consists of the Allowed Secured Claim of IndyMac Bank, which arises from a pre-petition loan, in the original principal amount of $204,000.00, with original lender 1st Mariner Bank. The Claim of IndyMac Bank is allegedly secured by a first priority mortgage Lien on the property located at 240 North Hollywood Avenue, Daytona Beach, Florida 32118. IndyMac Bank shall receive, in full satisfaction of its claim, the property located at 240 North Hollywood Avenue, Daytona Beach, Florida 32118, as the indubitable equivalent of its Allowed Secured Claim, pursuant to 11 U.S.C. §1129(b)(2)(A)(iii). Any difference between the amount of the Allowed Secured Class 69 Claim and the Allowed Claim of IndyMac shall be treated as a Class 83 Unsecured Claim and paid accordingly.

R2.    Class 70- Citibank (240 N. Hollywood Ave.)

Class 70 consists of the Allowed Secured Claim of Citibank, which arises from a pre-petition loan, in the original principal amount of $25,500.00, with original lender 1st Mariner Bank. The Claim of Citibank is allegedly secured by a second priority mortgage Lien on the property located at 240 North Hollywood Avenue, Daytona Beach, Florida 32118. The amount of the Allowed Secured Class 70 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. §506, and paid accordingly

S2.    Class 71- Citibank (312 N. Hollywood Ave.)

Class 71 consists of the Allowed Secured Claim of Citibank, which arises from a pre-petition loan, in the original principal amount of $196,000.00, with original lender 1st Mariner Bank. The Claim of Citibank is allegedly secured by a first priority mortgage Lien on the property located at 312 North Hollywood Avenue, Daytona Beach, Florida 32118. Citibank shall receive, in full satisfaction of its claim, the property located at 312 North Hollywood

77

Avenue, Daytona Beach, Florida 32118, as the indubitable equivalent of its Allowed Secured Claim, pursuant to 11 U.S.C. §1129(b)(2)(A)(iii). Any difference between the amount of the Allowed Secured Class 71 Claim and the Allowed Claim of Citibank shall be treated as a Class 83 Unsecured Claim and paid accordingly.

T2.    Class 72- Citibank (312 N. Hollywood Ave.)

Class 72 consists of the Allowed Secured Claim of Citibank, which arises from a pre-petition loan, in the original principal amount of $24,500.00, with original lender 1st Mariner Bank. The Claim of Citibank is allegedly secured by a second priority mortgage Lien on the property located at 312 North Hollywood Avenue, Daytona Beach, Florida 32118. The amount of the Allowed Secured Class 72 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. §506, and paid accordingly

U2.    Class 73- RBJ (21 S. Peninsula Dr.)

Class 73 consists of the Allowed Secured Claim of RBJ, which arises from a pre-petition loan, in the original principal amount of $212,000.00, with original lender Concord Mortgage Company. The Claim of RBJ is allegedly secured by a first priority mortgage Lien on the property located at 21 S. Peninsula Drive, Daytona Beach, Florida 32118. RBJ shall receive, in full satisfaction of its claim, the property located at 21 S. Peninsula Drive, Daytona Beach, Florida 32118, as the indubitable equivalent of its Allowed Secured Claim, pursuant to 11 U.S.C. §1129(b)(2)(A)(iii). Any difference between the amount of the Allowed Secured Class 73 Claim and the Allowed Claim of RBJ shall be treated as a Class 83 Unsecured Claim and paid accordingly.

V2.    Class 74- RBJ (21 S. Peninsula Dr.)

Class 74 consists of the Allowed Secured Claim of RBJ, which arises from a pre-

petition loan, in the original principal amount of $26,500.00, with original lender Concord Mortgage Company. The Claim of RBJ is allegedly secured by a second priority mortgage Lien on the property located at 21 S. Peninsula Drive, Daytona Beach, Florida 32118. The amount of the Allowed Secured Class 74 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. §506, and paid accordingly

    W2.    Class 75- Bank of New York  (25 S. Peninsula Dr.)

Class 75 consists of the Allowed Secured Claim of the Bank of New York, which arises from a pre-petition loan, in the original principal amount of $160,000.00, with original lender Cimarron Mortgage Company. The Claim of the Bank of New York is allegedly secured by a first priority mortgage Lien on the property located at 25 S. Peninsula Drive, Daytona Beach, Florida 32118. Bank of New York shall receive, in full satisfaction of its claim, the property located at 25 S. Peninsula Drive, Daytona Beach, Florida 32118, as the indubitable equivalent of its Allowed Secured Claim, pursuant to 11 U.S.C. §1129(b)(2)(A)(iii). Any difference between the amount of the Allowed Secured Class 75 Claim and the Allowed Claim of Bank of New York shall be treated as a Class 83 Unsecured Claim and paid accordingly.

    X2.    Class 76- R-G Crown Bank  (442 Peninsula Dr.)

Class 76 consists of the Allowed Secured Claim of R-G Crown Bank, which arises from a pre-petition loan, in the original principal amount of $390,000.00, with original lender R-G Crown Bank. The Claim of R-G Crown Bank is allegedly secured by a first priority mortgage Lien on the property located at 442 Peninsula Drive, Daytona Beach, Florida 32118. In full satisfaction of the Allowed Class 76 Secured Claim, R-G Crown Bank shall be deemed to have an Allowed Secured Claim in the amount of $176,371.11. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same

validity and priority as existed as of Petition Date. The Allowed Secured Class 76 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 76 Claim and the Allowed Claim of R-G Crown Bank shall be treated as a Class 83 Unsecured Claim and paid accordingly.

Y2.     Class 77-Wells Fargo  (514 Phoenix)

Class 77 consists of the Allowed Secured Claim of Wells Fargo, which arises from a pre-petition loan, in the original principal amount of $246,500.00, with original lender Wells Fargo. The Claim of Wells Fargo is allegedly secured by a first priority mortgage Lien on the property located at 514 Phoenix Avenue, Daytona Beach, Florida 32118. Wells Fargo shall receive, in full satisfaction of its claim, the property located at 514 Phoenix Avenue, Daytona Beach, Florida 32118, as the indubitable equivalent of its Allowed Secured Claim, pursuant to 11 U.S.C. §1129(b)(2)(A)(iii). Any difference between the amount of the Allowed Secured Class 77 Claim and the Allowed Claim of Wells Fargo shall be treated as a Class 83 Unsecured Claim and paid accordingly.

Z2.     Class 78- Trailwood 8 (Trailwood Lots)

Class 78 consists of the Allowed Secured Claim of Trailwood 8, which arises from a pre-petition loan, in the original principal amount of $210,000.00, with Trailwood 8. The Claim of Trailwood 8 is allegedly secured by a first priority mortgage Lien on the property known as Lot 19, 20, 21, 22, 23, and 24 in Trailwood Village at Willow Trail Run, Port Orange, Florida 32127. Trailwood 8 shall receive, in full satisfaction of its claim, the property located at Lot 19, 20, 21, 22, 23, and 24 in Trailwood Village at Willow Trail Run, Port Orange, Florida

32127, as the indubitable equivalent of its Allowed Secured Claim, pursuant to 11 U.S.C. §1129(b)(2)(A)(iii). Any difference between the amount of the Allowed Secured Class 78 Claim and the Allowed Claim of Trailwood 8 shall be treated as a Class 83 Unsecured Claim and paid accordingly.

 A3. Class 79-Resmae Mortgage (129 Wild Olive)

 Class 79 consists of the Allowed Secured Claim of Resmae Mortgage, which arises from a pre-petition loan, in the original principal amount of $243,000.00, with original lender Resmae Mortgage. The Claim of Resmae Mortgage is allegedly secured by a first priority mortgage Lien on the property located at 129 South Wild Olive Avenue, Daytona Beach, Florida 32118. Resmae Mortgage shall receive, in full satisfaction of its claim, the property located at 129 South Wild Olive Avenue, Daytona Beach, Florida 32118, as the indubitable equivalent of its Allowed Secured Claim, pursuant to 11 U.S.C. §1129(b)(2)(A)(iii). Any difference between the amount of the Allowed Secured Class 79 Claim and the Allowed Claim of Resmae Mortgage shall be treated as a Class 83 Unsecured Claim and paid accordingly.

 B3. Class 80-Resource Bank (129 Wild Olive)

 Class 80 consists of the Allowed Secured Claim of Resource Bank, which arises from a pre-petition loan, in the original principal amount of $30,150.00, with original lender Resource Bank. The Claim of Resource Bank is allegedly secured by a second priority mortgage Lien on the property located at 129 South Wild Olive Avenue, Daytona Beach, Florida 32118. The amount of the Allowed Secured Class 80 Claim shall be treated as a Class 83 Unsecured Claim, pursuant to 11 U.S.C. §506, and paid accordingly.

 C3. Class 81-Woodlea Investment (Monroe Lot 16)

 Class 81 consists of the Allowed Secured Claim of Woodlea Investment, which

arises from a pre-petition loan, in the original principal amount of $34,500.00 with Woodlea Investment. The Claim of Woodlea Investment is allegedly secured by a first priority mortgage Lien on the property located at Monroe Street, Lot 16, Port Orange, Florida 32127. In full satisfaction of the Allowed Class 81 Secured Claim, Woodlea Investment shall be deemed to have an Allowed Secured Claim in the amount of $23,856.40. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 81 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 81 Claim and the Allowed Claim of Woodlea Investment shall be treated as a Class 83 Unsecured Claim and paid accordingly.

D3.    Class 82-Sunshine State Community Bank (817 Big Tree Road)

Class 82 consists of the Allowed Secured Claim of Sunshine State Community Bank, which arises from a pre-petition loan, in the original principal amount of $71,300.00 with Sunshine State Community Bank. The Claim of Sunshine State Community Bank is allegedly secured by a first priority mortgage Lien on the property located at 817 Big Tree Road, South Daytona, Florida 32118. In full satisfaction of the Allowed Class 82 Secured Claim, Sunshine State Community Bank shall be deemed to have an Allowed Secured Claim in the amount of $71,300.00. The Allowed Secured Claim shall be secured by a first priority mortgage Lien on the aforementioned property to the same validity and priority as existed as of Petition Date. The Allowed Secured Class 82 Claim shall be paid through monthly payments of principal and interest based on a 30-year amortization and a 30-year term with a six percent (6%) fixed rate of

interest. Interest will commence on the Effective Date and the first payment due thirty days thereafter. Any difference between the amount of the Allowed Secured Class 82 Claim and the Allowed Claim of Sunshine State Community Bank shall be treated as a Class 83 Unsecured Claim and paid accordingly.

E3. <u>Class 83 - General Unsecured Claims</u>.

Class 83 consists of the Allowed Claims of the Unsecured Creditors. The Debtor estimates the total amount of Class 83 Claims, for both bankruptcy cases, is approximately $8,091,012.81. Holders of Allowed Class 83 Claims will receive, in full satisfaction of their Claims, a pro rata distribution from the Disposable Income Account. Distributions to Class 83 are speculative in nature and depend upon the actual disposable income of the debtor generated over five (5) years from the Effective Date. The Debtors, through GEA Investments, will make Payments in Cash to the holders of Allowed Class 83 Claims from the Disposable Income Account on a quarterly basis over five (5) years from the Effective Date. The first quarterly payment will be made on the Effective Date. Thereafter, the Reorganized Debtors shall make Pro Rata distributions no later than the 15th day of the month following the close of the quarter in which payment is due. In the event that the Debtors opt to sell one or more of the properties, the Debtors shall deposit the Net Proceeds from the sale of the property into the Disposable Income Account.

## ARTICLE VII - UNEXPIRED LEASES AND EXECUTORY CONTRACTS.

To the extent the Debtors reject any executory contract or unexpired lease prior to the Confirmation Date, any party asserting a Claim pursuant to Section 365 of the Code arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease, and any Allowed Claim resulting

from rejection shall be a Class 83 Claim except as otherwise provided herein. The Debtors shall have through and including the hearing on Confirmation within which to assume or reject any unexpired lease or executory contract; and, further, that in the event any such unexpired lease or executory contract is not rejected by such date, then such unexpired lease or executory contract, including all contracts listed in the Schedule of Executory Contracts filed earlier in the case, shall be deemed rejected as of the Confirmation Date.

## ARTICLE VIII. - MEANS OF IMPLEMENTATION.

A. Substantive Consolidation

The Plan contemplates the substantive consolidation of the Chapter 11 Cases of GEA Investments and Jack Aberman into a single case solely for purposes of Confirmation, consummation, and implementation of the Plan. Aberman shall retain his exempt property and the substantive consolidation shall in no way affect his personal exemptions. Pursuant to the confirmation order, on the Confirmation Date: (i) all assets of the Debtors and all proceeds thereof and all liabilities of the Debtors will be treated as though the assets and liabilities were merged into the Reorganized Debtors; (ii) any obligation of the Debtors and any Claims filed in the case of a Debtor or to be filed in connection with any such obligation will be deemed one Claim against Reorganized Debtors; (iii) each and every Claim filed in the individual Chapter 11 Case of Aberman will be deemed filed against Reorganized Debtors; (iv) for purposes of determining the availability of setoff under section 553 of the Bankruptcy Code, the Reorganized Debtors shall be treated for purposes of the Plan as one entity so that, subject to the provisions of section 553 of the Bankruptcy Code, debts due to any of the Reorganized Debtors may be set off against the debtors of any of the Reorganized Debtors.

84

B. Business Operations and Cash Flow

The Plan contemplates that the Reorganized Debtors will continue to operate the Reorganized Debtors' business, with low operating expenses. The Debtors believe the cash flow from the continued operation of its business will be sufficient to meet required Plan Payments.

C. Funds Generated During Chapter 11.

Net Operating Funds generated from operations until the Effective Date will be used for Plan Payments.

D. Management and Control of Reorganized Debtor.

Aberman shall remain the sole officer and director of GEA Investments and shall oversee the operation of the Reorganized Debtors.

E. Stock in Reorganized Debtor.

After Confirmation, the common stock of the Equity Holder shall remain in full force and effect as set forth herein.

**THE FOREGOING SUMMARY DISCUSSION IS GENERAL IN NATURE AND HAS BEEN INCLUDED IN THE PLAN SOLELY FOR INFORMATIONAL PURPOSES. THE DEBTOR MAKES NO REPRESENTATIONS CONCERNING, AND DOES NOT HEREBY PROVIDE ANY OPINION OR ADVICE WITH RESPECT TO THE SECURITIES LAWS AND BANKRUPTCY LAW MATTERS DESCRIBED ABOVE.**

F. Additional Provisions

    1. Procedures For Resolving Disputed Claims

        a. Prosecution of Objections to Claims

U:\BKRY\GEA SEASIDE INV\PLD\GEA\PLAN 7-8-08.DOC

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, the Debtors shall have the exclusive right to make and file objections to Administrative Claims and all Claims.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Equity Interests shall be filed with the Court and served upon the Holders of each of the Claims and Equity Interests to which objections are made within 90 days after the Confirmation Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order, or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that, Debtors had immediately prior to the commencement of the Chapter 11 Cases, against or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Debtors shall have, retain, reserve and be entitled to assert all such claims, causes of action, rights of setoff and other legal or equitable defenses that any Debtors had immediately prior to the commencement of the Chapter 11 Case as if the Chapter 11 Case had not been commenced.

b.    Estimation of Claims

Pursuant to the Plan, the Debtors may, at any time, request that the Bankruptcy Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation

concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, disputed or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

c.    Cumulative Remedies

In accordance with the Plan, all of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim or Equity Interest becomes, or is otherwise deemed in this Plan to be, an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim or Disputed Equity Interest for purposes related to allocations, Distributions, and voting under the Plan.

d.    Payments and Distributions on Disputed Claims

Except as otherwise provided in the Plan, as and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid by the Debtors, as set forth herein, such that the Holder of such Allowed Claim receives all payments and Distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question; provided, that the aggregate amount that the Holders of Class 83 Claims shall receive shall not exceed the

proceeds in the Disposable Income Account. Notwithstanding any provision in the Plan to the contrary, no partial payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order. Unless otherwise agreed by Debtors provided herein, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a Distribution until such dispute is resolved by settlement or Final Order.

### e.     Allowance of Claims and Interests

#### (i)     Disallowance of Claims

According to the Plan, all Claims held by Entities against whom the Debtors are seeking a Final Order establishing liability for a cause of action under Sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that Entity have been settled or resolved by a Final Order and all sums due the Debtors by that Entity are turned over to such Debtors.

#### (ii) Allowance of Claims

No Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Chapter 11 Case, unless and until such Claim or Equity Interest is deemed Allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Chapter 11 Case allowing such Claim or Equity Interest.

### f.     Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

## ARTICLE IX. - MISCELLANEOUS.

### A. Effect of Confirmation

#### 1. Authority to Effectuate the Plan

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court.

#### 2. Amendments to the Plan.

The Debtors reserve all rights to amend, alter, or withdraw this Plan before conclusion of the Confirmation Hearing and to amend, modify, or alter this Plan after the Confirmation Date, in accordance with the applicable provisions of the Code.

#### 3. Post-Confirmation Status Report.

Pursuant to the Plan, within 120 days of the entry of the Confirmation Order, the Debtors will file status reports with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

B. **Preservation, Prosecution, and Defense of Causes of Action.** The Debtors shall have the right to pursue any and all Causes of Action, including all pending adversary proceedings and contested matters whether or not such Causes of Action have been commenced as of the Effective Date. The Debtors shall prosecute or defend, as appropriate, such actions through final judgment, any appeals deemed necessary and appropriate by the Debtors and collection; provided, however, that the Debtors shall be authorized at any point in any litigation to: (a) enter into such settlements as the Debtors deems to be in the best interest of creditors, subject to bankruptcy Court approval and after notice and a hearing in accordance with Bankruptcy Rule 9019; or (b) to abandon, dismiss and/or decide not to prosecute any such litigation if the Debtors deems such action to be in the best interest of creditors without approval of the Bankruptcy Court.

C. **Retention of Professionals.**

The Reorganized Debtors may retain professionals on such terms, as the Reorganized Debtors deems reasonable without Bankruptcy Court approval. Persons who served as professionals to the Debtors prior to the Effective Date may also continue to serve the Reorganized Debtors.

D. **Conditions to Effectiveness.**

The Effective Date shall not occur until all of the following conditions have been satisfied:

1. The entry of the Confirmation Order by the Bankruptcy Court in form and content acceptable to the Debtors and expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; *provided, however,*

90

that, if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, Debtors may in writing elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.

2.      Inclusion in the Confirmation Order of an injunctive provision staying, restraining, and enjoining all individuals or entities, from commencing, enforcing, perfecting, or setting off any claim, judgment, or interest against Debtors, or any property thereof, or against any of Debtors' transferees for the purposes of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to, any Claim or Equity Interest; provided, that such injunctive provision shall not prevent any governmental unit from enforcing such governmental unit's police or regulatory power.

3.      All ancillary documents necessary to implement and confirm the Plan have been approved by the Debtors unless the Debtors have waived this requirement in writing.

Upon the satisfaction or waiver of each of the foregoing conditions, the Debtors shall so notify the Bankruptcy Court, and upon the filing of such notice the Plan shall become Effective without further Order of the Bankruptcy Court provided that all of the conditions to effectiveness of the Plan set forth herein, including those set forth below, have been met.

E.      <u>Police Power</u>

Nothing in this Plan shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtors for any act, omission,

or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to Section 1141 of the Code.

F.    Retention of Jurisdiction.

After the Effective Date, Debtors will be free to perform all functions assigned to it under the Plan without approval of the Bankruptcy Court, except as specifically set forth herein. However, the Bankruptcy Court will continue to retain jurisdiction in this Case with respect to the following matters:

1.    All objections to the allowance of Claims and Interests and the compromise of Claims;

2.    All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in Debtors' cases by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; *provided, however,* that fees of professionals for services rendered after the Effective Date may be paid by Debtors, in the ordinary course of business without a Bankruptcy Court order; *provided, further, however,* in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

3.    Any adversary proceedings or contested matters brought by Debtors or the Creditor Agent, including, without limitation, the Causes of Action, the proceedings then pending or thereafter brought pursuant to Sections 544, 545, 547, 548, 549, and 550 of the Code or other proceedings calculated to generate payments to Holders of Allowed Class 21 Claims;

92

4. All controversies and disputes arising under or in connection with the Plan;

5. The enforcement and interpretation of the provisions of the Plan;

6. To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7. Any motion to modify the Plan in accordance with Code Section 1127, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8. All Claims arising from the rejection of any executory contract or lease;

9. Such other matters as may be provided for in the Code or the Plan;

10. To protect the property of the Estate from adverse claims or interference inconsistent with the Plan;

11. To ensure that Distributions are accomplished as provided herein and to resolve any dispute concerning the right of any person to a Distribution hereunder, applicable law or under a contract or agreement; and

12. To hear and determine any action or controversy by or against the Debtors.

G. <u>Headings</u>.

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

H. <u>Cramdown</u>.

Debtors reserve the right to seek confirmation of the Plan under Section 1129(b) of the Code.

I.    Discharge.

As of the Effective Date and pursuant to Section 1141 of the Code, Debtors shall be discharged from any debt that arose before the Confirmation Date and any debt of a kind specified in Sections 502(g), 502(h), and 502(i) of the Code, whether or not:

1.    A proof of claim based upon such debt is filed or deemed filed under Section 501 of the Code;

2.    A Claim based upon such debt is allowed under Section 502 of the Code; or

3.    The holder of a Claim or Interest based upon such debt has accepted the Plan.

J.    Regulatory Approval and Retirement Plans.

It will not be necessary for the Debtors to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions and the provisions of the Code. The Debtors do not have any retirement plans.

94

K.    Notices.

All notices required or permitted to be made, in accordance with the Plan, shall be in writing and shall be delivered personally, by facsimile transmission, or mailed by United States Mail to the following:

> If to Debtors:
> GEA Seaside Investments, Inc.
> c/o Jack Aberman
> 434 N Halifax Avenue, Suite 2,
> Daytona Beach Florida 32118
>
> With copies to:
> Elizabeth Green, Esquire
> Latham, Shuker, Eden & Beaudine LLP
> 390 N. Orange Avenue, Suite 600
> Orlando, Florida 32801

L.  Manner of Payment.

Any payment of Cash made under this Plan may be made either by check drawn on an account of GEA Seaside Investment Inc., by wire transfer or by automated clearing house transfer from a domestic bank, at the option of GEA Seaside Investment Inc.

M.  Compliance with Tax Requirements.

In connection with this Plan, to the extent applicable, the Debtors in making distributions under this Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Debtors may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides to the Debtors as applicable, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the

Debtors to the appropriate authority. If the holder of an Allowed Claim fails to provide to the Debtors the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Debtors to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the holder's distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

N. Transmittal of Distributions to Parties Entitled Thereto.

All distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. All distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the holder with the provisions of this Plan to: (i) its address set forth in its proof of claim; (ii) the latest mailing address filed for the holder of an Allowed Claim entitled to a distribution; (iii) the latest mailing address filed for a holder of a filed power of attorney designated by the holder of such Allowed Claim to receive distributions; (iv) the latest mailing address filed for the holder's transferee as identified in a filed notice served on the Debtors pursuant to Bankruptcy Rule 3001(e); or (iv) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtors' books and records.

O. Distribution of Unclaimed Property.

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan which is unclaimed after six months following the relevant

distribution date shall be forfeited, and such distribution together with all interest earned thereon shall become an Asset to be distributed and conveyed to the Debtors in accordance with the provisions of this Plan. However, checks issued by the Debtors in respect of Allowed Class 83 Claims will be null and void if not cashed within sixty (60) days of the date of issuance and revest in the Debtors. Requests for reissuance of any such check shall be made in writing to the Debtors, as applicable, by the Holder of the Allowed Class 83 Claim with respect to the check originally issued.

P. Fractional Cents and Equity; Multiple Distributions.

Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents or distribution of fractional equity will be made under this Plan. Cash will be issued to holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent) and equity will be rounded to the nearest whole number. To the extent that cash remains undistributed as a result of rounding of such fractions, such cash shall be treated as unclaimed property under the Plan.

Q. Transfer Taxes.

Under Section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer, under this Plan shall not be taxed under any law imposing a stamp tax or similar tax.

R. Revocation and Withdrawal of the Plan.

The Debtors reserve the right to withdraw the Plan at any time before entry of the Confirmation Order. If: (i) the Debtors revoke and withdraw this Plan; (ii) the Confirmation Order is not entered; (iii) the Effective Date does not occur; (iv) this Plan is not substantially

consummated; or (v) the Confirmation Order is reversed or revoked, then the Plan shall be deemed null and void.

S. Modification of Plan

The Debtors may seek to amend or modify the Plan in accordance with 1127(b) of the Bankruptcy Code, or remedy and defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan. On or before the Effective Date, Debtors may issue, execute, deliver, or file with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate, and further evidence the terms and conditions of the Plan.

**DATED** this 20th day of August 2008 in Orlando, Florida.

| GEA SEASIDE INVESTMENT, INC. AND JACK ABERMAN | COUNSEL FOR GEA SEASIDE INVESTMENT, INC. AND JACK ABERMAN |
|---|---|

By: _Jack Aberman_
    Jack Aberman

/s/ Elizabeth Green, Esq.
Elizabeth Green, Esquire
Florida Bar No. 0600547
Jacqueline Ferris, Esquire
Florida Bar No. 713481
**LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
390 N. Orange Avenue, Suite 600
Orlando, Florida 32801
Telephone: (407) 481-5800
Facsimile: (407) 481-5801